STATE, *ex rel.* A. MASON and ERNEST MCGINNIS, v. CARL G. ROSE, W. H. DONOVAN, T. A. JOHNSON, R. R. SAUNDERS and ROGER H. WEST, as and constituting the members of the State Racing Commission, CARL G. ROSE, as Chairman of said Commission, and W. H. DONOVAN, as Secretary of said Commission.

165 So. 347.

Division A.

Opinion Filed January 22, 1936.

*Shutts & Bowen* and *Charles A. Carroll,* for Relators;

T. G. Futch, Carl T. Hoffman, L. L. Robinson,* and *Bussey, Mann & Barton,* for Respondents.

BROWN, J.—The relators are owners of racing greyhounds engaged in the business of racing such dogs in this and other states for prize or purse money. The petition for, and the alternative writ of, mandamus, allege that twelve of the dogs owned by relator Mason are quartered in kennels especially provided by and at the Biscayne Kennel Club in Dade County under a written permit from said Club with the understanding and intention of said relator that the said dogs should engage in racing at such Kennel Club and at other licensed dog race tracks in this State during the ensuing racing season. Sixteen of such dogs owned by the relator McGinnis are kenneled in such county on private property, and intended to be used by him in racing at said track. The greyhounds thus owned and intended to be raced during the coming season by the relators, it is alleged, are duly registered with the National Coursing Association, an unincorporated association interested in the undertaking and advancement of greyhound coursing and racing, and in improving the class or breed of racing greyhounds in the United States and certain foreign countries. It is alleged that said association has its principal offices and places of

business in Kansas City, Missouri, and has a membership of approximately three thousand members, including owners and breeders of dogs, and was formed in 1886, when it began its record registry of racing dogs, which records are commonly referred to as a stud book, which is the nationally recognized stud book for racing greyhounds, and charges reasonable fees for registration. That relators are members, in good standing, of said association.

· The relators also allege that they are members in good standing of an unincorporated association of racing greyhound owners and breeders, known as the National Greyhound Breeders and Racing Association, consisting of approximately all breeders and owners of racing greyhounds, who are also members of the National Coursing Association. That among the purposes of the National Greyhound Breeders and Racing Association is the protection of the interests of the dog-owner membership thereof, through officials and committees duly appointed by the membership, who are constantly working for and on behalf of the membership of said association and to give such members the benefit of this collective association of dog-owners which is working for the improvement and standardization of the conditions under which such racing is done, so as to benefit and protect the owners of said dogs and the supporting public; that the rules of said association are not contrary to the rules of the Florida State Racing Commission other than the order or rule adopted on October 21, 1935, which rule so adopted by said racing commission reads as follows:

· "The owner of any dog desiring to enter the same in any race meeting conducted under license from the Florida State Racing Commission shall submit to such licensee evidence showing qualifications of said dog to enter such racing meeting, together with evidence of its registry with the

American Kennel Club. Such applicant shall also sign a pledge to the Florida State Racing Commission agreeing that such applicant will abide by the rules now or hereafter adopted by the Florida State Racing Commission, and will waive all rules of any registry or racing association of which such applicant is a member which have not been adopted by the Florida State Racing Commission."

The petition and writ further allege that the American Kennel Club referred to in the above mentioned order or rule, has no record of the pedigree of said racing dogs prior to a small number of registries made after the announcement in August of 1935, of an intention of said racing commission to make an order designating that source of registry; that said American Kennel Club did not previously register racing dogs as a class, but that its stud book has been a registry of show dogs or bench dogs, of all kinds. That the stud book records of the National Coursing Association built up over more than a generation, would not be available through the American Kennel Club except as the latter might copy and appropriate such information to the cost and detriment of said pioneer organization in that field; that only about seven hundred racing greyhounds are registered to date with the American Kennel Club, whereas the number of dogs required for normal racing at the licensed tracks in this State for the coming season is approximately four thousand. That the order or rule above quoted was adopted by the State Racing Commission pursuant to an understanding with the members of the racing commissions of other states, and is an attempt on the part of respondents to destroy the worth of the National Coursing Association stud book and to deprive relators and others similarly situated of the benefit of their registration in said stud book for dog racing purposes in Florida, and also con-

stituting an effort to nullify and abolish the National Grey-hound Breeders and Racing Association, of which the relators are members in good standing. That in order to race their dogs under said rule, relators would be required to reregister their dogs with the American Kennel Club, and would deprive relators and 90% of the other owners of such dogs in this State of the substantial benefits to them of membership in the National Greyhound Breeders and Racing Association.

The respondents filed a motion to quash the alternative writ and also, without waiving the motion, filed an answer in which it is alleged that the National Greyhound Breeders and Racing Association is the Racing Division of the National Coursing Association, which racing division is endeavoring to entirely control the racing of dogs in the several states in which said sport is legalized, and prevent the owners of dogs not registered with the Coursing Association from participating in said race meets. Respondents deny that the National Coursing Association stud book has at all times constituted the nationally recognized stud book for racing greyhounds or that it has ever been recognized as the official stud book of any State Racing Commission, whereas, on the contrary, the American Kennel Club had been recognized in all States of the Union where the sport is legalized by the Racing Commissions of such States. It is further alleged that the stud book of all registries, whether American or foreign, are part of the records of the American Kennel Club, which has registered dogs for over seventy years, through which time it has been recognized throughout the world as fully competent to register any dog regardless of its kind or breed; that the registry fee has been reduced to $2.00, and that is all that it would cost the relator for each registry; that there are now approximately

1,500 racing greyhounds registered with the American Kennel Club, and others are being registered daily, notwithstanding the efforts of the two associations of which relators are members, to prevent the registration in said American Kennel Club stud book of said racing dogs in which efforts intimidation, threats of violence and other unfair methods to prevent the registration of racing dogs in the American Kennel Club stud book had been resorted to, the purpose being to secure the absolute control or domination of dog racing in the State of Florida and to .usurp the power and jurisdiction of the State Racing Commission.

The answer contains many other allegations, but we do not deem it necessary to review further the facts alleged in either the alternative writ or the answer thereto. The action herein taken by us might well be based upon the allegations of the alternative writ alone.

In 1931, the Legislature adopted Chapter 14,832 of the Laws of Florida, establishing the State Racing Commission and prescribing its duties and powers. The purpose of the Act was to legalize the racing of dogs and horses in this State, with the usual accompaniment of the pari-mutuel system of betting on the races, under certain terms, conditions and limitations, fixed in the statute, and under the supervision of the enforcement of the Act, and the attainment of its purposes, by the State Racing Commission.

In 1935, the Legislature, by Chapter 17,276, amended certain sections of the Act of 1931, the effect of which amendment was to broaden the scope of the Act and the power of the State Racing Commission.

Under Section 2 of said 1931 Act, as amended by Section 2 of said 1935 Act, it is provided, in its subsection 4, that it shall be the duty of the State Racing Commission to carry out the provisions of said Act and that the said Commission

shall have the power and authority "to make rules and regulations for the control, supervision and direction of applicants, permittees, nad licensees, and for the holding, conducting, and operating of all race tracks, race meets, and/or races held in this State, provided such rules and regulations shall be uniform in their application and effect, and the duty of exercising this control and power is hereby made mandatory upon such Commission."

The power of the Legislature to thus authorize a Commission to make rules and regulations for the purpose named in the statute, is well settled by the case of Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, and the line of cases following that case. While the action of the Commission in the making of rules is subject to judicial review as to whether any particular rule, which is attacked, is reasonably appropriate to the accomplishment of the purposes of the Act and within the power of the Commission to adopt, nevertheless, when acting within the authority expressly or impliedly conferred upon them, a wide discretion must be accorded to the Commission in the exercising of such authority. State v. A. C. L. R. Co., 57 Fla. 526, 54 So. 394. This is especially true of the State Racing Commission. The relators have no vested right to race their dogs for money upon the licensed tracks in this State. They are engaged in a business which would be unlawful had not the Legislature seen fit to legalize it under certain conditions and to supervise its operations by a State Commission. What relators are seeking in this case is to secure what they deem proper protection for what is more in the nature of a privilege than a vested right. The State Racing Commission asserts that the action they have taken was necessary to maintain and promote the highest standards of the sport of greyhound racing and to carry out the objects and purposes of

the statute legalizing it. That their action is subject to review as to its reasonableness, and as to whether such action is within their powers, has we think been clearly established by our previous decisions; and such official action is subject to judicial review in proper cases by mandamus. See State, *ex rel*. Pinellas Kennel Club, v. State Racing Commission, 116 Fla. 143, 156 So. 317.

In the light of our previous decisions, and those of other courts cited in briefs of counsel, our conclusion is that the first sentence of the rule adopted by the State Racing Commission in October, 1935, and hereinabove set forth, is a reasonable one and within the power of such commission to adopt. The first sentence of said rule, in substance, requires that dog owners desiring to enter their dogs in any race meeting conducted under license from the State Racing Commission, shall submit to the licensee operating the track evidence that such dogs are qualified to enter such race and are registered with the American Kennel Club.

But the second and last sentence of the rule is, in our opinion, arbitrary and unreasonable. That sentence requires in effect that each such applicant shall sign a pledge that he will abide by the rules, whether lawful or unlawful, now or hereafter adopted by the State Racing Commission, and will waive all rules of any registry or racing association of which he is a member regardless of their character which have not been adopted by the Florida State Racing Commission. If this sentence had merely required the applicant to pledge himself to abide by all *lawful* rules now or hereafter adopted by the Commission, and to waive the benefit of any rules of any registry or racing association, of which he is a member, which are *in conflict* with those of the Florida State Racing Commission, it might have been within the power and discretion vested in the Racing Commission

under the broad language of the statute to adopt; but, as it is not now necessary, we need not rule upon what the Commission might have done, in framing the second sentence of the rule, and we will not decide such questions unless and until they are presented to us. Suffice it to say, the second sentence of the rule, as written, is arbitrary, unreasonable and invalid.

But the command of the writ is not only that the Commission be commanded to rescind its action as to the second sentence in the rule, but also to rescind and vacate such rule to the extent "that it requires registry of relators' dogs with the American Kennel Club as a condition of qualification for the racing of such dogs in this State." The command of the alternative writ is therefore too broad and the motion to quash the alternative writ must therefore be granted. If leave to amend the alternative writ is desired by relators, a motion to that effect if made within the next five days will be given due consideration. For that reason, we will not at this time dismiss the cause from the docket. Meanwhile, the constitutional writ heretofore granted in this case will be continued in effect until the further order of this Court.

Motion to quash alternative writ granted.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.