STATE, *ex rel.* HOLLYWOOD JOCKEY CLUB, INC., v. JOSEPH R. STEIN, PARKS GLOVER, FRANK ROGERS, S. J. HILBURN, E. A. WILLIAMS, as and constituting the State Racing Commission, and said JOSEPH R. STEIN, as Chairman of State Racing Commission, and said PARKS GLOVER, as Secretary of State Racing Commission, and the said STATE RACING COMMISSION.

182 So. 863.
Opinion Filed July 20, 1938.

*Fred M. Valz* and *R. R. Saunders,* for Relator;

*H. P. Baya* and *George Couper Gibbs,* Attorney General, and *W. P. Allen,* Assistant Attorney General, for Respondents.

BROWN, J.—This mandamus proceeding involves the authority of the State Racing Commission to make a rule providing that horse racing shall be conducted only between the hours of 12 noon and 7 P. M., Eastern Standard Time. The petition and alternative writ of mandamus issued thereon allege that the petitioner, Hollywood Jockey Club, Inc., a Florida corporation, was granted a permit to conduct racing at its plant in Broward County, Florida, under and by virtue of Chapter 14832 of the Laws of 1931, amended in certain respects by Chapter 17276 of the Laws of 1935, and that in accordance with the provisions of the statute said permit was duly ratified by a majority of the voters voting in a special election held in Broward County on August 3, 1937, in accordance with said law. That the petitioner is engaged in the building of a horse racing track in said county near the City of Fort Lauderdale, which will be completed prior to the 1st day of December, 1938 (which petitioner prays for leave to amend to read the 3rd day of August, 1938), and that it is the plan and intention of the petitioner to conduct horse racing at night by use of a well lighted track and modern methods, public announcement of which plan had been made. That there are not, nor has there ever been, any horse racing track operating at night within the confines of this State, but that by modern methods of lighting it has been found most profitable to conduct dog racing, baseball games, football games and other sports at night and that such amusements so conducted enjoy a most profitable patronage from the general public. That

Section 4 of said statute as amended in 1935 reads as follows:

"Section 4. Any person, association or corporation desiring to operate a race track in this State shall have the right, subject to the provisions of this Act, to hold and conduct one or more race meetings at such tracks each year. Hereafter horse race track meetings shall be held only during the period extending from and including the 10th day of December in each year to and including the 10th day of April the following year and hereafter dog race track meetings shall be held only during the period extending from and including the 1st day of December in each year to and including the 10th day of April the following year; Provided, that both horse race and dog race meetings shall be limited as to number of racing days as provided in Section 8 of Chapter 14832, Laws of Florida, Acts of 1931, and provided further no race or racing shall be permitted on Sunday. No minors, excepting jockies, jockey apprentices and exercise boys shall be permitted to attend said races or to be employed in any manner about the race tracks."

It is further alleged that the State Racing Commission assembled in the American Bank Building in Miami on April 12, 1938, and adopted, among other rules, the following rule known as Rule 34 (a):

"Every association shall conduct horse racing only between the hours of 12 noon and 7 P. M., Eastern Standard Time."

That the effect of said rule is to deny petitioner the right to race at night, making the investment of petitioner in Broward County practically worthless; that said rule is not reasonably appropriate to the purposes of the statute legalizing racing, being the statute above referred to; and that said action of the racing commission in adopting said rule is arbitrary and unlawful and that the commission is

without lawful authority to limit the hours during the days and dates granted by said commission in which a person, firm or corporation, holding a legally ratified permit, may conduct racing, provided, however, that said racing be not conducted on Sunday.

The alternative writ, issued upon this petition, commands Joseph R. Stein and others, as and constituting the members of the State Racing Commission, to convene forthwith and without undue delay and by resolution rescind the arbitrary and unlawful action taken by said commission on April 12, 1938, in adopting said rule 34 (a) or to show cause to this Court why a peremptory writ should not issue commanding the same to be done. The respondents filed a motion to quash the alternative writ upon the ground that it is not made to appear that the relator has a clear legal right to the performance by the respondents of the command directed to them; that Chapter 17276 amended Section 2 of the Act of 1931 relating to racing, the effect of which amendment clearly gives to the Florida State Racing Commission full power and authority to make rules and regulations for the control, supervision and direction of all applicants, permittees and licensees, for the holding and conducting of all races in this State, with the provision that such rules and regulations so adopted shall be uniform in their application and effect, the said duty being made mandatory by the Act upon the commission; and that it is not made to appear by the alternative writ that said rule 34 (a) is not uniform in its application and effect. That it further appears by Section 1 of Chapter 17276, Acts of 1935, that said commission is vested with and possessed of the powers and duties specified in said Act and "all other powers necessary and proper to enable it to execute fully and effectually all the purposes of this Act"; and that it is not shown in the alternative writ that the respondent, in the exercise of its rule making power

under the law, and in its discretion, has been either arbitrary or unreasonable.

Motion to quash further says that the allegations of the writ that the rule complained of makes relator's investment practically worthless, and that it is not reasonably appropriate to the purposes of the Act, are conclusions of the pleader not based upon substantive facts from which the court can determine as a matter of law that the effect of the rule is such that the relator can complain.

It is further alleged that the alternative writ does not show that relator is licensed to conduct racing for the season 1938-1939, nor that it has filed its application with the commission to be so licensed, or if it has filed its application for a license to conduct racing for the season 1938-1939, that such application for license has been accompanied by proof in such form as the commission might require, that it still possesses all the qualifications described by Section 2 of Chapter 17276, Acts of 1935; that unless and until relator has applied for such a license and first satisfied the commission that it still possesses all the qualifications prescribed by said Section 2, it is not authorized under Section 7 of said Act to be licensed and to have days and dates assigned to it as provided by Section 2, and unless relator has complied with these conditions precedent it is not authorized to conduct horse racing as a licensed track and is without authority to seek the relief commanded under the alternative writ. That it further appears that the respondent racing commission is duly authorized by the statute to make rules and regulations for the control, supervision and direction of the conduct and operation of race tracks, race meets, etc., provided such regulations be uniform in their application and effect, and that in making said rule the commission was acting under authority of law and within

its lawful discretion and that the rule so adopted was for the best interest of racing in the State.

Without waiving its motion to quash the alternative writ the respondent commission filed a return in which it alleged that said commission derived its authority from the Act hereinabove referred to and is vested with the rule making power under Section 1 and Section 2 of Chapter 17276 hereinabove referred to; that the commission in and by virtue of said authority and within its lawful discretion, after due and full consideration, did on April 12, 1938, adopt said rule No. 34 (a), that same was done for the best interest of the public as well as the various licensees, and that the same was a reasonable and proper rule for the purpose of enabling the commission to carry out, execute and control legalized racing in this State, and that said rule so adopted is reasonable and proper, and uniform in its application and effect.

It is further alleged that at no time prior to the issuance of mandamus had the relator completed its race track and been possessed of a track suitable for racing at its said plant, although more than nine months had elapsed since the ratification of plaintiff's permit on August 3, 1937, and that under Section 6 of the State Racing statute, unless said track is constructed and suitable for conducting races prior to August 3, 1938, the permit granted to the relator shall be null and void and the commission authorized to cancel the permit. That it is not positively alleged that relator will have said track constructed by August 2, 1938. It might be noted here that the application for amendment to the alternative writ, so as to allege that relator will have its track constructed and completed by August 3, 1938, will be regarded as having been allowed and appears to meet this particular allegation of the return. The 7th, 8th and 10th paragraphs of respondents return reads as follows:

## "Seventh.

"These respondents further show that it has long been the set policy of the Jockey Club (New York) not to permit night racing to be conducted upon any running race course subject to its jurisdiction and that in order to make public its regulations in this respect, that said Jockey Club (New York) in September of 1931 adopted a Resolution, copy of which is hereto annexed, and made a part hereof, to the effect that any running race meeting conducted by artificial lighting that shall be permitted, becomes thereby automatically an unrecognized meeting, and that the horse owners of any horses competing therein, and trainers and jockeys who officiated therein, as well as all horses competing at any such meeting shall become disqualified from acting as such and taking part in any race meeting held under the sanction or jurisdiction of the Jockey Club (New York). And these respondents further show that the permit granted to relator and accepted by it, and upon which it sought ratification by an election in Broward County, and which was duly ratified, was granted to it, subject to the provisions and the rules and the regulations adopted by this Commission. That it is required by Rule 197 of the Horse Racing Rules adopted by these respondents that only horses that are duly registered and named through the registry office of the Jockey Club (New York) shall be allowed to race, as will appear from the copy of said Rule hereto annexed, and that even though the Rule herein complained of had not been adopted by the State Racing Commission, nevertheless no horse owner or trainer or jockey or horse could be permitted to compete in any running race at night for the reason that no horse participating in said race and so trained or owned could be registered through the Jockey Club (New York) in accordance with Rule 197 requiring the same.

## "Eighth.

"These respondents further admit that the adoption of said Rule 34 (a) would deny to the petitioner the right to conduct racing at night, but aver the adoption of the rule was within its discretion and lawful authority, and is uniform in its application to every horse racing track authorized to conduct racing in this State; and they specifically deny that the effect of the adoption of this Rule 34 (a) in anywise makes the investment of the relator in Broward County practically worthless, but aver on the other hand that there never has been any horse racing conducted at night under the law legalizing racing in this State, and respectfully show that the history of horse racing permitted in this State discloses that the investment of each and all of them has been a profitable one, although all of said horse racing has been conducted between the hours of 12 noon and 7 P. M., Eastern Standard Time."

## "Tenth.

"These respondents further show to the Court that the Rule adopted by this Commission prohibiting horse racing except between the hours of 12 noon and 7 P. M., Eastern Standard Time, is a wise and necessary one for the regulation, direction and control of legalized horse racing; that the adoption of said Rule is for the protection of the sport and its maintenance on a high standard; that it is likewise for the protection of both man and beast; that the effect of the Rule requires racing in the daytime, which enables the Judges and the public to clearly see the race at every stage of its progress, and that the environment of the race track itself shall be open at all times in the clear light of day, all of which will tend to a proper regulation of horse racing for the benefit of the public and the operating tracks, as well as the State itself. That the Commission in the

consideration of the adoption of this Rule has given full consideration to its adoption as necessary for the regulation of horse racing to the best advantage in this State, as well as for the avoidance of any criticism against the legalized sport from the public.

"These respondents respectfully show that horse racing at night has received the condemnation of the Jockey Club (New York), and that the National Association of Racing Commissioners on August 22, 1936, adopted the Resolution known as Resolution No. 8, Night Racing as follows:

"BE IT RESOLVED THAT THE ASSOCIATION GO ON RECORD AS OPPOSED TO ANY NIGHT RACING."

"And that they have likewise been advised by the Chairman of the New Hampshire Racing Commission that they have had no horse racing at night nor have they had application to conduct such races, and that he should be very strongly against any night racing in New Hampshire, and believed that it would cheapen the sport greatly and that he believed that the Rule 34 (a) adopted by the Florida Commission prohibiting horse racing at night was an excellent one."

Motion of relator for the granting of the peremptory writ notwithstanding the return was recently filed, and the case was set down for oral argument, and was duly argued by counsel for both relator and respondents before this Court on June 29th, 1938. Therefore, we are not called upon at this time to rule only upon the motion to quash the alternative writ. Counsel for the relator argues that rule 34 (a), restricting the hours of horse racing from 12 noon to 7 P. M. is in effect a prohibition of horse racing on licensed tracks at any other time and that while the commission had the power *to regulate* it has no power to *prohibit;* citing Thousand Island Park Association v. Tucker (N. Y.) 60 L. R. A. 786, and *ex parte* Frank Lewinsky, 66 Fla. 324,

63 So. 577; Shreveport Traction Co. v. City of Shreveport, 47 So. 43, and various other cases going to show that the word regulate implies not so much the creating of a new thing as the arranging in proper order and controlling that which already exists.

The case of *ex parte* Lewensky does not go to the full extent of relator's contention. In that case the petitioner in habeas corpus was held under a warrant charging him with violating Chapter 6516 of the Laws of 1913, in that he sold intoxicating liquors to a female, and also had side entrances and screens to his barroom where intoxicating liquors were sold. In the opinion in that case, this Court said:

"The cited Act of the Legislature is alleged to be unconstitutional and void, upon two grounds: The title being 'An Act to Regulate the Sale or Furnishing of Intoxicating Liquors, Wines or Beer, and Prescribing a Penalty for the Violation of Certain of Its Provisions' is said to be too restrictive to admit of the prohibitions therein contained. The assertion is untenable. Every regulation is of necessity a restriction. 'Regulate' is defined by Webster to mean 'to direct by rule or restriction,' and it has been specifically held by the Supreme Court of Indiana, as sufficiently expressive of the subject of an Act, prohibiting the sale of intoxicating liquors to minors and to persons in the habit of getting drunk. Williams v. State, 48 Ind. 306. Our Legislature goes but one step further, in that it includes in the restriction also 'females,' a class frequently associated in matters of legislation, with infants and others in need of special protection, and a class not now before us complaining if they may be heard to so complain, that they are deprived of any rights in not being admitted to drink at a public bar.

"Our State Constitution does not bind the Legislature in dealing with the liquor traffic so long as the legislation stops short of actual or practical prohibition, and it may not be

properly claimed the present Act goes that far. The Federal Constitution leaves the regulation of the liquor busi-ness entirely to the several States to deal with or prohibit as they may see fit, with possible exceptions not here involved, and we conceive of no valid reasons why a liquor dealer may object successfully that the Legislature will not permit him to sell to minors, females, or persons intoxicated, or forbid him privacy in the sale of intoxicants, or the privilege of making his place of business attractive for the loiterer, by the use of chairs and tables."

The case of Shreveport Traction Co. v. City of Shreveport, 122 La. 1, 47 So. 40, cited by relator, was a case dealing with validity of an ordinance reducing the fare to be charged by a street Railway Company. The city charter gave the City Council the power by ordinance "to regulate the government of carts, drays, wagons and other vehicles, freight locomotive, passengers and street cars." The defendant city contended that the power to regulate included the right to lower the rate of fares. The city had granted the defendant Company franchises which limited the fare not to exceed five cents per passenger. The 5th headnote reads:

"An ordinance granting the right to a Street Railway Company to run its cars on terms and conditions stated by its acceptance confers a right, and thereafter the city council cannot lower the fare to be charged over the objection of the company."

In the course of its opinion, the court used the language which relator calls to our attention in its brief, which reads as follows:

"We are of opinion that to regulate means such restrictions as may be necessary to protect the public from harm; it does not mean the least confiscation of any right or anything that will affect the revenues of the grantee. The right

to 'regulate' is to prescribe rules for the government of the cars in the city., It applies also to the means by which they are propelled. *Ex vi termini* it includes the right to 'regulate' the speed and other similar rights. Words and ,Phrases, vol. 7, p. 6043.

"These rights to regulate do not affect the revenues."

In the same opinion it is also said:

"With confidence, learned counsel for defendant quoted the following from Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 633, in which Chief Justice WAITE for the Court said:

" 'This power of regulation is a power of government continuing in its nature, and that if it can be bartered away at all, it can only be by words of positive grant, or something which is in law equivalent. If there is a reasonable doubt it must be resolved in favor of the existence of power.'

"We have no reason to disagree from the expression just quoted. There must not be an unreasonable construction placed upon the grant such as would deprive the municipality of all authority, and if any doubt arises in regard to the extent of the power it should be resolved in favor of the municipality."

In 53 C. J., pages 1172 to 177, there is a considerable discussion of the word "regulate," supported by numerous citations of authorities. On page 1172, it is said:

"REGULATE. A. In General. The term is derived from the Latin word, *rego,* signifying to guide or direct, through the noun, *regula,* a rule. The term is one of broad import, has a broad meaning, and is very comprehensive in its scope. There is some diversity of opinion as to what is the meaning of the word, and, as to its application to a particular state of facts, some courts giving to the term a somewhat restricted, and others giving to it a liberal, construc-

tion. It means and implies both government and restriction."

And on pages 1174 to 1176 C. J. it is said:

"C. What Implied—1. By Word Itself. The word ordinarily implies not so much the creating or establishment of a new thing, as the arranging in proper order and controlling that which already exists. It has been held to contemplate or imply the continued existence of the subject matter to be regulated; a power of restriction or restraint; and it has been said that the word implies full power over the thing to be regulated and involves the adoption of a rule or guiding principle to be followed.

"2. By Power to Regulate. The power to regulate, it has been said, implies the power to check, and may imply the power to prohibit under certain circumstances; it implies the right to license, to prescribe rules and regulations for the conduct of the business regulated, and to rule and direct.

"D. What Term Includes. The power to regulate, it has been said, carries full power over the thing subject to regulation, and that, in the absence of restrictive words, the power must be regarded as plenary over the entire subject. The power to regulate may include the power to confine a business with reference to place, or time, to control, to grant the use of a (thing) on stated conditions; to increase and reduce, to license; to refuse a license, to require bond from an applicant therefor, and to require the taking out of a license; to prescribe reasonable rules, regulations and conditions upon which a business may be conducted or permitted; to enforce them, and to prescribe punishment for violation thereof; to restrain; or to tax or to exempt from taxation.

"E. What Term Does Not Include. It has been held that the power to regulate does not include the power to create a monopoly; to destroy a trade or occupation; to

grant exclusive franchises; to impose a tax for revenue; to prohibit either in a general sense, or without a license first obtained; to regulate fares; to restrict; to revoke; or to suppress."

The case of State v. Quigg, 94 Fla. 1056, 114 So. 859, dealt with the validity of an ordinance prohibiting the use of jitney busses on certain streets in a congested area of the city. The city had the charter power to license, control and regulate traffic upon the streets and sidewalks of the city. The 7th headnote in that case reads as follows:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highways his place of business and uses it for private gain, in the running of a stage-coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature."

In the case of *Ex parte* Pricha, 70 Fla. 265, 70 So. 403, this Court held that where the sale of intoxicating liquors is authorized in a county, it is still subject to such regulation under the police power as the Legislature may require short of actual or practical prohibition. The 4th headnote in that case reads as follows:

"Under the title of 'An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer, and prescribing a penalty for the violation of certain of its provisions, and repealing laws in conflict herewith,' the Legislature may prohibit the sale of such liquors, wines or beer, in counties where the sale of the same is allowed by law, in less quan-

tities than one-half of a pint, and may further prohibit such sale, unless such liquors, wines or beer are contained in securely sealed receptacles."

We think it might be safely said that in a general sense, the power to regulate does not include the power to prohibit; but as applied to the situation here presented, the adoption of a rule limiting horse racing on licensed tracks in this State to certain hours, which hours are those within which racing has been conducted heretofore by the voluntary action of the racing associations, is a regulation rather than a prohibition of racing. The rule does not stop horse racing in this State, but permits it to go on as it has been going on since the adoption of the Racing Commission Act in 1931, and therefore it does not amount to a complete prohibition, which of course would be beyond the regulatory power vested in the Racing Commission. However, every regulation commanding any act to be done in a certain way impliedly and necessarily restricts or prohibits the doing of the act in any other way. In this sense all powers of regulation are to some extent prohibitory in their character and effect, and if this element nullified or invalidated rules and regulations it would completely defeat and destroy a large part of the regulatory and rule-making power vested by the Legislature in the various boards and commissions which have been vested with such powers, by the Legislature in this State, including the State Racing Commission.

In legalizing the racing of horses and dogs in this State, with the usual accompaniment of the pari mutuel system of betting on races, under the terms, conditions and regulations fixed in the statute, and under the supervision and regulatory control of a State racing commission, the Legislature embarked upon a system of licensing and regulating a business which had theretofore been unlawful, and its power to provide for the regulation of the conduct of such

business, cannot be doubted, nor is it questioned by the relator here. In the case of State, *ex rel.* Mason, v. Rose, *et al.,* 122 Fla. 413, 165 So. 347, this Court said:

"Under Section 2 of said 1931 Act, as amended by Section 2 of said 1935 Act, it is provided, in its Sub-section 4, that it shall be the duty of the State Racing Commission to carry out the provisions of said Act and that the said Commission shall have the power and authority 'to make rules and regulations for the control, supervision and direction of applicants, permitees, and licensees, and for the holding, conducting, and operating of all race tracks, race meets, and/or races held in this State, provided such rules and regulations shall be uniform in their application and effect, and the duty of exercising this control and power is hereby made mandatory upon such Commission.'

"The power of the Legislature to thus authorize a Commission to make rules and regulations for the purpose named in the statute, is well settled by the case of Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, and the line of cases following that case. While the action of the Commission in the making of rules is subject to judicial review as to whether, any particular rule, which is attacked, is reasonably appropriate to the accomplishment of the purposes of the Act and within the power of the Commission to adopt, nevertheless, when acting within the authority expressly or impliedly conferred upon them, a wide discretion must be accorded to the Commission in the exercising of such authority. State v. A. C. L. R. Co., 57 Fla. 526, 54 So. 394. This is especially true of the State Racing Commission."

Further on in the opinion in that case the Court added:

"That their action is subject to review as to its reasonableness, and as to whether such action is within their powers, has we think been clearly established by our previous decisions; and such official action is subject to judicial

review in proper case by mandamus. See State, *ex rel.* Pinellas Kennel Club, v. State Racing Commission, 116 Fla. 143, 156 So. 317."

In the case quoted from this Court held that a rule adopted by the Racing Commission requiring dog owners to submit to licensees operating dog tracks in this State evidence that their dogs were qualified to enter the race and had been registered with the American Kennel Club, was held to be reasonable and within the power of the Commission, although the effect of that rule was to prohibit the entry of any dogs that had not been registered as required.

The further provision in said rule, however, requiring any dog owner desiring to register his dogs in races to sign a pledge that he would abide by the rules of the Commission (whether lawful or unlawful) and would waive all rules of any association of which he was a member, was held to be arbitrary, unreasonable and invalid and beyond the power of the Commission to adopt.

In the case of State, *ex rel.* Allen, v. Rose, 123 Fla. 544, 167 So. 21, it was said:

"The Legislature has vested the State Racing Commission with the power to make rules and regulations appropriate to the accomplishment of the purposes of the Act. That power is not vested in this Court, and as the exercise of this rule-making power involves the exercise of the discretion and judgment of the board, this Court cannot, by writ of mandamus or otherwise, dictate the rules of the board or command them to adopt any particular rule. This Court has never gone that far, and to do so would be to depart from the fundamental principles which separate the judicial from the legislative, executive and administrative departments of the government, as well as to go contrary to the well settled principles applicable to mandamus proceedings."

It is further contended by the relator in this case that the rule here involved is not only arbitrary and unreasonable, but that it is beyond the power vested in the Commission to adopt, and in fact that such rule is in direct conflict with the statute itself.

It is well settled in this State that the Legislature may expressly authorize designated officials to provide rules and regulations for the complete operation and enforcement of a law within its express general purposes, but it may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying, the law. Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; State v. Duval County, 76 Fla. 180, 79 So. 692; Panama Refining Co. v. Ryan, 293 U. S. 388; 79 L. Ed. 446; Pridyen v. Sweat, 125 Fla. 298, 170 So. 653, 56 Fla. 617.

Relator contends that the only authority given to the Racing Commission by the Act, Chapter 17276, Laws of Florida, with reference to the time or hours within which racing shall be permitted, is contained in Section 4 of said Act, hereinabove quoted, which prescribes that horse track meetings shall be held only during the period extending from the 10th day of December in each year to and including the 10th day of April of the following year, and dog track meetings shall be held during the period from December 1st of each year to April 10th of the following year, and providing that dog and horse race meetings shall be limited as to the number of racing days as provided in Section 8 of Chapter 14832, Acts of 1931; provided further that no race or racing shall be permitted on Sunday. Section 8 of said Chapter 14832 reads as follows:

"No license or licenses shall be granted to any person, association or corporation or to any race track for a meet or meeting in any County to extend longer than fifty racing

days for horse racing and ninety racing days for dog racing in any twelve month period."

Section 2 of Chapter 14832 as amended by Chapter 18276, which sets forth the duties of the Commission, reads in part as follows:

"To fix and set the dates for racing in any county where there are one or more horse tracks or one or more dog tracks seeking to race and holding ratified permits upon which any track can operate in any county, apportioning such dates to the several tracks in such counties in a fair and impartial manner. Provided, however, that where only one licensed dog track is located in a county, such track shall be entitled to operate ninety (90) days, during the racing season at option of said dog track."

The contention of the relator is that these sections of the Act give the Commission the power, within the limitations expressed, to fix and set the dates or days for racing, and that this express grant of power negatives the theory that the Commission has the further power to prescribe or limit the number of hours within any one or more of the days or dates which the Act makes it the duty of the Commission to fix, set and apportion, it being the intention of the Legislature to make it the duty of the Commission to set the dates and apportion the number of days fairly and impartially and leave it to the licensed race track association to itself determine what part or portion of the hours of such days shall be adopted for the actual racing of horses and dogs; that the Racing Commission is not a law-making body, and that in attempting to pass a rule determining at what hours in the day horse racing may be conducted it is going beyond the scope of the power vested in it by the express terms of the legislative Act, and is thus usurping the powers of the Legislature. This contention is most plausible, but it omits giving full consideration to the scope

of the power vested in the Racing Commission by the express language of the Act to make rules and regulations for the conducting and operating of race tracks and race meets held in this State, provided such rules and regulations shall be uniform in their application and effect. We think this power to make rules for the conduct of races did give the Commission the power to make a rule, such as the one here in question, providing that horse racing shall be conducted between the hours of 12 noon and 7 P. M., unless such rule can be said to be arbitrary and unreasonable. The facts alleged in the return of the respondent Racing Commission are such that this Court cannot, upon the showing thus made, hold that said rule *is* arbitrary and unreasonable or entirely beyond the scope and purposes of the Act. Reading the Act as a whole, we think it was the intention of the Legislature to vest a considerable degree of regulatory and rule-making power in the State Racing Commission.

It is true, as argued by relator, that the Court judicially knows that dog racing under the jurisdiction of the Florida Racing Commission has been conducted almost exclusively at night. Relator argues that if the respondents have the power to prohibit horse racing at night, it would of course have the power to prohibit dog racing at night, and that if this were done millions of dollars of investment in this State, made upon the faith of this Act, would be ruined over night. But there may be differences in the facts and circumstances surrounding horse racing, as compared with those surrounding dog racing, not developed by the pleadings now before us, which would permit the Commission to authorize dog racing at night and prohibit it as to horse racing. The general rule is that a regulation enacted by an administrative board, within the apparent scope of its powers, will be deemed *prima facie* reasonable and justified by the facts unless the facts as shown require a conclusion

to the contrary. See McConville v. Bank, 101 Fla. 727, 135 So. 392, and cases cited. There are certain facts alleged in the return of the respondent Commission, even after omitting some portions of the quoted paragraphs, which tend to show that there are some reasons why, in the judgment of the Commission, the allowance of horse racing at night would be detrimental to the successful operation of licensed horse racing in this State as authorized by the Act. The factual situation as so far developed by the pleadings in this case would not in our opinion warrant this Court in holding the action of the Commission arbitrary, unreasonable and invalid, or justify the Court in granting the motion for the peremptory writ, notwithstanding the answer, which motion admits all facts well pleaded in the answer.

At the same time, we realize the importance to the relator of a correct decision of this question, because, as set forth in the alternative writ, the relator is the holder of a permit which the Commission did not have the discretion to refuse, the determination of that question having been left to the votes of the people of Broward County, who thereby authorized it. Certainly the respondent Commission has no power to arbitrarily deprive the relator of the full benefit of that permit in so far as such benefit is conferred or authorized by a fair and correct interpretation of the terms of the statute under which it was secured. We gather from the very able argument of this case, as well as from the language of the petition for, and of the alternative writ itself, that the effect of the rule adopted by the Commission will be to prevent the relator from conducting night horse racing after it has incurred great expense in preparation therefor upon the belief that night horse racing was permissible under the Act, and that until recently no rule had been adopted by the Commission to the contrary. But the

fact that the adoption of this rule would work severe hardship upon the relator would not justify us in holding said rule invalid unless such holding is founded upon an allegation of facts which clearly shows the rule to be arbitrary and unreasonable, or that there was a lack of statutory power on the part of the Racing Commission to adopt it.

It is further argued that the rule is arbitrary and unreasonable because it is in contravention of the purposes sought in legalizing racing for the reason that it requires all hore racing to be held in the daylight hours when a great majority of persons who are fortunate enough to be employed cannot avail themselves of the opportunity to see such races, thus creating an unreasonable and arbitrary distinction between the leisure class and the working class. But if, as alleged in the Racing Commission's response to the writ, the conduct of horse racing in this State cannot be maintained upon that high plane, which is essential to its efficient and successful operation, if it be permitted at night as well as in the day time, we can hardly hold the rule to be unreasonable because the effect of it would be to deprive many employed persons of the opportunity to attend the races.

Furthermore, at the time the statute legalizing racing and establishing the State Racing Commission was enacted in 1931 and amended in 1935, night horse racing was unknown in this section of the United States. Therefore it can hardly be said that the Legislature in passing the Act had in mind the legalizing of night horse racing, even though the statute did not expressly prohibit it, and the rule that the Racing Commission has adopted in effect merely makes' compulsory a practice of afternoon daylight horse racing which had hitherto been exclusively followed by the licensed horse racing associations of this State without any rule requiring it. In the light of these facts it would re-

quire a stronger showing than has so far been made in this case for this Court to hold that the adoption of the rule limiting racing to daylight hours is so arbitrary and unreasonable as to require this Court to command the Commission to meet and rescind the rule. It may be that the language of the racing statutes of this State is sufficiently broad to authorize the Racing Commission to permit horse racing at night, if in their judgment it is fair and reasonable and for the best interests of the business and of the public to do so, but on the other hand we are not convinced that the language of the statutes is such as to *require* the Racing Commission to authorize or permit night horse racing, or to prevent them from expressly limiting horse racing to certain daylight hours, as they have recently done, if in the judgment of the Commission it is a fair and reasonable and necessary regulation, and one that would prevent the inauguration of a practice that would be detrimental to the attainment of the purposes of the Act, unless it can be and is, made clearly to appear that such action is arbitrary, unreasonable and invalid. On the face of the pleadings now before us, we cannot say that this has been clearly made to appear.

For the reasons above stated the motion for the granting of a peremptory writ notwithstanding the respondents' return is denied.

WHITFIELD and CHAPMAN, J. J., concur.

ELLIS, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting).—I think the rule referred to is arbitrary and beyond the power vested in the Commission. I think the legislative determination by which the time during which racing may be conducted is fixed left no field, for the determination of the time during which races could be conducted by the Commission except as in the statute specifically provided.

If the Commission may promulgate the rule involved it may in the exercise of like power promulgate another rule changing the time during which recess may be conducted from 12 noon until 7 o'clock P. M. to permit racing only between 7 o'clock P. M. and midnight, upon the theory that racing during such hours would be beneficial to the general welfare and be conducive to non-interference with other business generally conducted only in daylight hours.

ELLIS, J. C., concurs.