61 So.2d 188 (1952)
JONES et al.
v.
KIND.
Supreme Court of Florida, Special Division B.
October 24, 1952.
*189 Richard W. Ervin, Atty. Gen., Mallory H. Horton, Asst. Atty. Gen., and Manuel M. Garcia, Tampa, for appellants.
E.F.P. Brigham and Phillip Goldman, Miami, for appellee.
MATHEWS, Justice.
David Kind, plaintiff in the Court below, appellee here, filed a bill for declaratory decree, injunction and other relief against D.C. Jones, Chairman, and others, as and constituting the Florida State Racing Commission, and Miami Beach Kennel Club, Inc., a Florida corporation.
The appeal is from a final decree based upon the bill of complaint, the answers and a stipulation made before the Chancellor.
The purpose and intent of the bill of complaint was to obtain a judicial construction of the powers, duties and rights of the respective parties under Chapter 550, Florida Statutes 1941, as amended, F.S.A., and the legality of any rules and regulations adopted by the Racing Commission and action taken or contemplated to be taken by the Racing Commission under the authority of said laws and any rules or regulations adopted pursuant thereto.
It appears that the specific question to be determined was whether or not the Commission, under the laws and rules and regulations in question, had the power and authority to require a stockholder to dispose of his stock in a corporation conducting racing because in the opinion of the members of the commission the stockholder is undesirable and his presence in racing in Florida in the capacity of a stockholder is regarded by the members of the commission as being undesirable and hurtful in this state and because of "public opposition" to the stockholder's connection with Florida racing.
After the hearing and argument the Chancellor entered an "opinion and declaratory decree." This opinion and declaratory decree sets forth very clearly the issues presented and the final disposition of the case. Pertinent parts of the opinion and decree are:
"The plaintiff, who is fifty-five years of age, is an American citizen and a resident of this county. For more than thirty years he has earned a livelihood in Florida and in other states as an employee at legally operated horse and dog racing tracks. As a result of experience and industry he has become a skilled rapid calculator. He has served his present employer, the defendant corporation, from 1931 (when pari-mutuel wagering on the results of horse and dog races was legalized in Florida) until now. Throughout such period (of more than twenty years) he has been licensed by the racing commission to pursue his occupation and has paid annually the occupational license tax prescribed by statute. He has never been accused, and is not now accused, of having violated any law or any rule or regulation of the commission governing the conduct of persons employed at, or connected with, the race tracks operated in this state; and it has never been charged, and is not now charged, that by law, or by rule or regulation, qualifications are prescribed which he does not possess.
"With savings accumulated during his years of employment, the plaintiff has acquired and owns seven hundred and fifty shares of the forty thousand shares of the issued capital stock of the defendant corporation. He owns, therefore, less than two per cent. of such outstanding stock.

*190 "On September 1, 1951, the racing commission, through the defendant chairman, advised the defendant corporation that in examining its application for racing dates the commission had found `the names of certain stockholders who, according to reliable information in possession of the racing commission, are undesirable' and whose `presence in racing in Florida in the capacity of stockholders, officers or employees is regarded by all the members of the Florida State Racing Commission as being undesirable and hurtful to racing in this state.' The plaintiff's name was among the several listed. The defendant corporation was asked to notify the persons named of the commission's attitude and to request their accession to the commission's wishes.
"The plaintiff was notified, but he refused to relinquish his employment or to dispose of his stock; and on October 17, 1951, he was served with a `citation,' which read: `Public opposition having been made to your connection with Florida racing, you are hereby cited to appear before the Florida State Racing Commission in its offices in the Pan American Bank Building, in the City of Miami, Florida, at 10:30 A.M. November 17, 1951, to show cause why action should not be taken by the commission to sever your financial interest in Florida race tracks.' The scheduled hearing was deferred to await the outcome of this litigation.
"I am called on to decide whether the defendant commissioners' procedure and contemplated action are within the limits of the authority and power delegated to the commission by the legislature. I hold that they are not. To hold otherwise would be to rule, it seems to me, that the legislature has granted to the commission authority and power to do anything it pleases in any way it chooses to correct what it regards as evil in the operation of race tracks and in the conduct of racing. * * *
"The business is one which clamors for rigid and unrelenting supervision, control and regulation by the state in the exercise of its police power; and the evident purpose and policy of our legislature, in enacting the law by which pari-mutuel wagering is permissible at race tracks, was to provide such supervision, control and regulation. It was necessary to delegate the authority and power to effectuate the legislative purpose and policy to some agency. The racing commission was created. Certain authority and powers are expressly and specifically delegated to it and it is vested with all other authority and power `necessary and proper to enable it to execute fully and effectually all the purposes of' the legislation. It is empowered to excercise and effectuate its authority and powers by the making and enforcement of `rules and regulations for the control, supervision and direction of all applicants, permittees and licensees, and for the holding, conducting and operating of all race tracks, race meets or races held in this state; provided such rules and regulations shall be uniform in their application and effect'; and `the duty of excercising this control and power is made mandatory upon such commission.'
"The legislation, however, does not privilege the commission to excercise unbridled discretion. Assuming (without deciding) that it has the authority and power to prescribe requirements (other than those prescribed by statute) which must be met to qualify persons for employment at race tracks or for stock ownership in corporate operating companies, such authority and power must be excerised by the adoption and promulgation of reasonable rules and regulations in which definite and understandable policies and standards are set forth. With the authority and power to adopt and promulgate such rules and regulations (if such authority and power exist) there necessarily goes the duty to adopt rules *191 and regulations which are `uniform in their application and effect.' They must apply impartially. When adopted and promulgated they become public records, open to all persons concerned, so that they may know the conditions to which they must conform.
"No rules and regulations militating against the plaintiff's employment or stock ownership have been adopted and promulgated by the commission. To its present members, however, the plaintiff has become `undesirable' as an employee and stockholder of the defendant corporation and, because (they say) `public opposition' to his `connection with Florida racing' has developed, he has been cited to appear before the commission `to show cause why action should not be taken by the commission to sever (his) financial interest in Florida race tracks.' * * *
"For the reasons stated, it is declared and decreed (a) that the `citation' of October 17, 1951, issued by the Florida State Racing Commission, through the defendant chairman, D.C. Jones, and directed to the plaintiff, David Kind (a copy of which, marked `Exhibit D,' is appended to and made a part of the plaintiff's bill of complaint), by which the plaintiff was cited to appear before the commission `to show cause why action should not be taken by the commission to sever (his) financial interest in Florida race tracks,' was issued without warrant or authority of law and that its service on, or receipt by, the plaintiff imposed no duty or obligation whatever on him to appear before the commission, as directed, or to take any action whatever in response or obedience to the commands and requirements of such `citation'; and (b) that such commission has no authority or power, in the circumstances now existing, to hold or conduct any meeting or hearing for the purpose stated in such citation or to take any action which should, if taken, affect or interfere with the plaintiff's status or rights as an employee or as a stockholder of the defendant corporation, Miami Beach Kennel Club, Inc."
We find no error in this decree.
There is no yardstick or limitation as to what would make, in the opinion of the members of the Commission, the stockholder "undesirable" and would cause him to be "regarded by all members of the Commission" as being undesirable and hurtful in this state and because of "public opposition" to the stockholder's connection with Florida racing.
To many people who are opposed to pari-mutuel racing in Florida, all persons owning stock in a corporation conducting a race track may be "undesirable" and such people may be a part of the "public" which would constitute "public opposition" to the particular stockholder's connection with Florida racing and to all other persons owning stock in Florida racing. The words "undesirable" and "public opposition" are very elastic terms. To the owners of stock of a competing race track all stockholders of another race track may be undesirable and the owners of the stock or the competing corporation may be a part of the public which would be in opposition to stockholders owning stock in another corporation conducting racing. Many people in the state (a part of the public) are opposed to race tracks, poolrooms, barrooms, cocktail lounges and many other things which may be distasteful to them, but which have been legalized and licensed to operate in this state.
It appears to be the contention of the appellants that they have uncontrolled, unbridled and unlimited authority to determine who is undesirable as a holder of stock in a corporation conducting racing or that public opposition to the stockholder's connection with Florida racing is sufficient justification for the Commission to order the stockholder to dispose of his stock. The law in question does not attempt to grant any such authority or power to the appellants and so far as the record shows they have not attempted to arrogate to themselves any such power.
Chapter 26832, Laws of Florida 1951, F.S.A. § 550.181 and note, was not involved *192 in this proceeding. In their brief the appellants request a construction of the Statute of 1951 and an advisory opinion from this Court as to the powers and duties of the State Racing Commission to promulgate a uniform rule and regulation of general application, which in its effect would empower or authorize the Racing Commission to require a stockholder of a permit-holder to dispose of his stock upon accusation and proof of conduct or affiliation detrimental to racing.
The appellants admit that this question was not raised in the proceeding in the Court below and was not passed upon.
We are not authorized to render advisory opinions to any board, bureau or officer of this state, except as provided for in Section 13, Article 4 of the Constitution of the State, F.S.A., with reference to opinion of the Justices of the Supreme Court as to the interpretation of any portion of the Constitution upon any question affecting the executive powers and duties of the Governor.
Affirmed.
SEBRING, C.J., ROBERTS, J., and FABISINSKI, Associate Justice, concur.