125 So.2d 883 (1961)
Morris WEXLER, Appellant,
v.
John R. RING, Chairman, J.O. Johnson, Secretary, Roger J. Waybright, C. Sweet Smith, Jr., and Warren H. Toole, Jr., State Racing Commission, Appellees.
No. 59-489.
District Court of Appeal of Florida. Third District.
January 16, 1961.
Rehearing Denied February 1, 1961.
Sibley, Grusmark, Barkdull & King, Miami Beach, for appellant.
George F. Gilleland. Miami, George Owen, Tallahassee, for appellees.
PEARSON, Judge.
This appeal is taken by a "horse owner" to review a circuit court order denying a petition for writ of certiorari. The petitioner-appellant filed his petition in the circuit court to review the action of the Florida State Racing Commission which denied him a race horse owner's license. The point presented upon appeal is: "May the racing commission, under the statutes of this state, deny to a `horse owner' a license based upon alleged activities in another state which were not shown to be illegal, occurring some ten years prior to the proceedings before the commission". Upon consideration of the record and the arguments presented, the judgment of the circuit court is affirmed.
The appellee has suggested that we consider this case as a second petition for *884 certiorari. The petition for writ of certiorari in the circuit court was an original proceeding. Boyd v. County of Dade, Fla. 1960, 123 So.2d 323, 327. As such it is reviewable here upon an appeal. State v. Furen, Fla. 1960, 118 So.2d 6.
The appellant made application under the rules of the Florida State Racing Commission for a license as a horse owner under section 550.10, Fla. Stat., F.S.A. The application was denied and hearing was held before the commission. An order entered January 2, 1959, formally denied an owner's license to the appellant. The order of denial contains a finding that Morris Wexler, prior to late 1950 or early 1951, engaged in disseminating racing results to bookmakers in Ohio, via a wire service. Other findings were that for over a period of thirty years, Wexler associated with bookmakers and for a part of this time was the conduit for the "laying-off" of horse bets, i.e., in order to avoid a large loss should a heavily played horse win, a bookmaker who had taken excessive wagers on that horse would contact Wexler, who, in turn, would call another bookmaker and place with him the excessive wagers.
Section 550.10, Fla. Stat., F.S.A., above referred to, provides:
"* * * the state racing commission may deny or revoke any license when the holder thereof has violated the rules and regulations of the commission governing the conduct of persons connected with the race tracks."
The legislature has prohibited the issuance of racing permits to certain persons who come within the purview of section 550.181, Fla. Stat., F.S.A., which in part reads as follows:
"On and after the first day of July, 1952, no person who shall have been convicted of a felony in the state, or under the laws of any other state, government or country of an offense which would be a felony if committed within this state, or who shall have been convicted of bookmaking in the state or elsewhere, or who is commonly known as a bookmaker and bears the general reputation of being a bookmaker, or who knowingly associates regularly with persons commonly known as bookmakers or criminals, shall hold any horse or dog racing permit or jai alai fronton permit in the state, or be a member of any association which holds such permit, or be an officer or director of any corporation which holds such a permit, or be an employee of the holder of any such permit in any capacity connected to any extent with the racing business or jai alai fronton business in the state."
It is within the meaning of this statute that no person who has been convicted of bookmaking or who is commonly known as a bookmaker or who knowingly associates regularly with bookmakers shall hold a racing permit or be the employee of anyone holding a racing permit or act in any capacity connected with the racing business. The appellant here is not an applicant for a racing permit, but it cannot be said that the racing commission acted in an unlawful manner when it applied the standard therein set forth to a person seeking such an intimate association with horse racing as that of an owner. The appellant here has admittedly been for thirty years in the "wire service business", which business is principally for the transmission of racing information, e.g., odds, results of races, and prices paid. From the record there is no doubt that the appellant was a close associate of bookmakers and that he has assisted bookmakers in "laying-off bets".
Having admitted such activities, the question is whether the lapse of time  during which it was not proved Wexler was engaged in similar activities  is sufficient to wipe the slate clean so that he should be entitled to participate in racing in Florida. The Supreme Court has recognized that the "wire service business" is an essential part of the "bookie" operation. McInerney v. Ervin, Fla. 1950, 46 So.2d 458. *885 In addition it is obvious that illegal betting strikes at the very purpose of racing in the State of Florida. It was also recognized in State ex rel. Mason v. Rose, 122 Fla. 413, 165 So. 347, that those who own the instruments of racing for money have no vested interest in a license to race in Florida. We conclude therefore that error has not been demonstrated. Cf. Rodriguez v. Jones, Fla. 1953, 64 So.2d 278.
The burden was upon the petitioner in the circuit court, as it was upon him as applicant before the State Racing Commission, to demonstrate his fitness to obtain a license under the laws of the State of Florida. It is not necessary for the respondent State Racing Commission to prove that the petitioner has been convicted of any crime or that he is presently engaged in any unlawful activity as a basis for its refusal to grant him the license.
Affirmed.
HORTON, C.J., and CARROLL, CHAS., J., concur.