QUESTION: May the Board of Business Regulation and the Division of Pari-mutuel Wagering of the Department of Business Regulation promulgate a rule which requires a pari-mutuel permittee, specifically a thoroughbred horse track, to open its stables and racing strips prior to the start of its racing season and remain open subsequent to the termination of its racing season?
SUMMARY: Absent subsequent judicial or legislative clarification, a rule proposed by the Division of Pari-mutuel Wagering to require all horse tracks within a 50-mile radius to open their stables and racing strips by November 1, and to remain open until 10 days beyond the closing of the winter racing season would appear to violate the necessary statutory authority requirement judicially expressed by the Florida courts. The Division of Pari-mutuel Wagering has proposed a rule that will require all thoroughbred horse tracks within a 50-mile radius of another to open their stables and racing strips by November 1 of each year and remain open until 10 days beyond the closing date of the track operating the last period of the winter racing season. See proposed Rule 7E-1.02(43), F.A.C. A similar rule had been previously in effect but it was repealed in 1972. The purpose of the rule is to assure horsemen shipping horses to the South Florida track of ample stall space. The division believes this stall availablity will enhance efforts to increase the quantity and quality of horses at Florida tracks. The division has also indicated some concern about the competitive impact of year-round racing programs authorized by the states of Illinois and New York. These valid state interests have been recognized as in: Gulfstream Park Racing Association, Inc. v. Board of Business Regulation, 318 So.2d 458 (1 D.C.A. Fla., 1975) cert. denied 323 So.2d 290 (Fla. 1975); West Flagler Association, Ltd. v. Board of Business Regulation, 241 So.2d 369, 376 (Fla. 1970); Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975); Hialeah Racecourse, Inc. v. Gulfstream Park Racing Association, (Fla. 1971); Hubel v. West Va. Racing Commission, 513 F.2d 243 (4th Cir. 1975). The rule is expected to have a substantial economic impact upon all three operating racetracks. Pursuant to s. 120.54(13), F. S., no agency has inherent rulemaking authority. It is clear that administrative agencies have no common-law powers and that the powers they do possess are limited to the statutes that create them. State ex rel. Greenberg v. Fla. St. Bd. of Dentistry,297 So.2d 628, 636 (1 D.C.A. Fla., 1974). Any rule must be reasonably related to the purposes of the enabling legislation and cannot be arbitrary or capricious to be sustained. See also Mourning Family Publication Service, 411 U.S. 356 (1972); Florida Citrus Commission v. Golden Gift, 91 So.2d 657; State ex rel. Paoli v. Baldwin, 31 So.2d 627; State ex rel. Burr v. Jacksonville Terminal Company, 106 So. 576. In effect, an administrative rule promulgated in the furtherance of a statute must be consistent with the provisions thereof. DeThorne v. Beck, 280 So.2d 448
(1973). Therefore, when a regulatory body is created by statute and endowed with the authority to promulgate rules and regulations to carry into effect statutory provisions, the rules and regulations must be consistent with those provisions and must not amend them. Florida Growers Co-op Transport v. Department of Revenue, 273 So.2d 142 (Fla. 1973). An administrative agency may not legislate, and its rules and regulations cannot add to or vary the nature of the extent of the authority conferred upon it by statute or change or amend the statutory law. Atlantic Coast Line Railroad Company v. Mack, 57 So.2d 447 (1952). The division has been granted authority to "carry out the provisions" of Chs. 550 and 551, F. S., and to make rules necessary for the "holding, conducting, and operating of all race tracks, race meets, races held in this state, provided, such rules and regulations shall be uniform in their application and effect." (Emphasis supplied.) State ex rel. Hollywood Jockey Club, Inc. v. Stein, 182 So. 863,871 (1938); State ex rel. Biscayne Kennel Club v. Stein,178 So. 133 (1938); Simmons v. Hanton, 65 So.2d 42 (Fla. 1953); State ex rel. Mason v. Rose, 165 So. 347 (1936). In Dept. of Business Regulation v. Vandervort, 273 So.2d 66 (Fla. 1973), the Supreme Court struck down a rule promulgated by the Division of Pari-mutuel Wagering which established a minimum jockey fee schedule for payment of jockeys in the absence of contract. In a brief per curiam opinion, the court stated that the rule was unconstitutional, reasoning as follows: We agree . . . that the Legislature has not specifically authorized the setting of fees, and this is too broad a power to be derived from the general statutes cited. [s. 550.01(1) and s. 550.02(4), F. S.] The Due Process Clauses of Article I, Section 9 of the Florida Constitution, F.S.A. and the 14th Amendment of the United States Constitution preclude the prescribing of minimum wages without specific legislative authorization. [273 So.2d at 67.] The same essential conclusion, lack of statutory authority, was found in Jones v. Kind, 61 So.2d 188 (Fla. 1952) when the court concluded that the then racing commission was without authority to require a person to sever his financial interest in racing. Of particular interest is St. Petersburg Kennel Club v. Baldwin, 38 So.2d 436
(Fla. 1949) in which a rule prohibited dog racing matinee programs during an authorized horse racing season if the tracks were within a 50-mile radius of each other. A Pinellas County dog track owner successfully challenged the rule since the rule would not be essentially uniform in application: We construe the words in paragraph 4, "such rules and regulations shall be uniform in their application and effect," to be of statewide application and effect, there being no attempt in the law at classification on any basis. If the rule complained of violates limitation (1) or (2) preceding paragraph in its practical application, it transcends the power of the State Racing Commission. [38 So.2d at 438.] In this instance, the effect of the proposed rule is the same as in Baldwin and contrary to the statutory requirements. The horse racing season will commence with Tropical at Calder opening around November 13 to be succeeded by Gulfstream and Hialeah. Calder will commence its summer horse racing season on or about May 13 and close on or about November 10. The effect of the rule will have all three tracks open November 1 and remain open to on or about May 21. Calder would, of course, be the only track required to remain open the entire year. That track is effectively prevented from ever closing its facilities to even be able to rebuild or take other necessary steps to ensure the safety of the attending public. Absent subsequent judicial or legislative clarification, this rule impact would appear to violate the necessary statutory authority requirement judicially expressed in Vandervort and Baldwin. See also Ch. 75-43, Laws of Florida.