KATHLEEN GILLETT, EVA A. LOWTHER and LEE ORA BROWN, as and Constituting the State Board of Beauty Culture Examiners, v. FLORIDA UNIVERSITY OF DERMATOLOGY, INC.

197 So. 852

En Banc

Opinion Filed September 17, 1940

Rehearing Denied October 12, 1940

*A. P. Buie,* for Appellants;

*D. O. Rogers,* for Appellee.

CHAPMAN, J.—This case is here on appeal from a final decree entered by the Circuit Court of Hillsborough County, Florida, permanently restraining the Board of Beauty Culture Examiners from the enforcement of the following rules adopted by it, viz.:

"No school of beauty culture shall be approved by this Board that does not provide at least one instructor for the first twenty students or fraction thereof; two instructors if the number of students be more than twenty and less than thirty-five. If the number of students enrolled in school shall exceed thirty-five then one instructor for each fifteen students enrolled shall be employed."

"All persons desiring to operate a school of beauty culture are required to make application for a permit to operate a school, using the form furnished by the State Board of Beauty Culture Examiners, and show by such application that they have met all requirements of the law and the requirements of the Board. When properly filled out and returned to the Board, school shall then be inspected, and when approved, a permit to conduct a school of beauty culture will be issued. (Any person holding such a permit will be permitted to retain same only so long as their school continues to meet the requirements of the Florida State Board of Beauty Culture Examiners and the Florida State Beauty Culture Law.)"

The final decree required the Board of Beauty Culture Examiners to approve the enrollment of certain named pupils in the school of beauty culture maintained and oper-

ated by the plaintiff below. The parties will be referred to as plaintiff and defendant Board as they appeared in the lower court.

It was alleged in the amended bill of complaint that the Florida University of Dermatology was a corporation and operated a beauty culture school under the provision of Chapter 16800, Acts of 1935, Laws of Florida. The school so operated was approved by the Board of Beauty Culture Examiners on April 30, 1937, and on September 16, 1939, the said certificate of approval previously issued, after a hearing or an opportunity to be heard, was revoked by the Board.

The reason for revoking the certificate of approval was that the school so operated maintained only one instructor for an enrollment of students therein of more than twenty. It was further alleged that to comply with the rules, *supra,* would deprive the school of all profits incident to its maintenance or operation. It is asserted that the two rules, *supra,* are unreasonable because: (a) they are arbitrary, invalid and unlawful;. (b) Chapter 16800, Acts of 1935, *supra,* is full, complete and independent of the two rules in question; (c) the rules, *supra,* are not authorized by provisions of Chapter 16800, *supra;* (d) the rules and regulations violate Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida; (e) the rules and regulations violate the Fourteenth Amendment of the Federal Constitution.

In the case of State *ex rel.* Mason v. Rose, 122 Fla. 413, 165 So. 347, this Court had before it a rule promulgated and adopted by the Florida State Racing Commission, viz.:

"The owner of any dog desiring to enter the same in any race meeting conducted under license from the Florida State Racing Commission shall submit to such licensee evidence

showing qualifications of said dog to enter such racing meet-ing, together with evidence of its registry with the American Kennel Club. Such applicant shall also sign a pledge to the Florida State Racing Commission agreeing that such applicant will abide by the rules now or hereafter adopted by the Florida State Racing Commission, and will waive all rules of any registry or racing association of which such applicant is a member which have not been adopted by the Florida State Racing Commission."

It was the contention of the State Racing Commission that the rule was within the power conferred by the Legislature in the enactment of Chapter 17276, Acts of 1935, State of Florida.

The State Racing Commission also contended that Chapter 17276, Acts of 1935, *supra,* conferred full and complete power to make and adopt rules and regulations for the purpose of regulating, controlling, supervising and directing all race tracks, race meets and races held within the State of Florida and that the rule, *supra,* was reasonable and adopted by the Racing Commission in an effort to accomplish the purpose and intention of the Act and for the purpose of promoting the highest racing standards in Florida.

The rule, *supra,* was in part sustained and in so doing this Court said (text page 419):

"The power of the Legislature to thus authorize a Commission to make rules and regulations for the purpose named in the statute, is well settled by the case of Bailey v. Van Pelt, 178 Fla. 337, 82 So. 789, and the line of cases following that case. While the action of the Commission in the making of rules is subject to judicial review as to whether any particular rule, which is attacked, is reasonably ap-

propriate to the accomplishment of the purposes of the Act and within the power of the Commission to adopt, nevertheless, when acting within the authority expressly or impliedly conferred upon them, a wide discretion must be accorded to the Commission in the exercising of such authority. State v. A. C. L. R. Co., 57 Fla. 526, 54 So. 394 * * *."

See State v. Duval County, 76 Fla. 180, 79 So. 692; Spencer v. Hunt, 109 Fla. 248, 147 So. 282; State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639; 60 Fla. 465, 54 So. 394; Panama Refining Co. v. Ryan, 293 U. S. 388, 79 L. Ed. 446; State v. Rose, 122 Fla. 413, 165 So. 347; Mayo v. The Texas Co., 137 Fla. 218, 188 So. 206.

It is well established that the Legislature has the constitutional power in the enactment of a statute to delegate therein to a Board or Commission the authority to adopt rules and regulations necessary in effect to carry out the legislative grant, but the power must be exercised in a reasonable manner so that the rules and regulations so promulgated or adopted are reasonable and calculated to accomplish the purposes of the statute. These rules and regulations at all times are subject to judicial review.

A delegation of the rule-making power is thus treated in 11 Am. Jur., pages 959-62, pars. 241-242:

"241. Applications of Delegated Rule-making Power.— Situations in which the various lawmaking bodies have delegated to administrative officers or boards the power to make regulations and to prescribe the necessary details to effectuate the declared policy of the law are very numerous and constantly increasing. Statutes conferring the power on executive officers to establish rules and regulations may

be enacted by Congress, as well as by a State Legislature; and this power may be conferred not only on executive officers, but also on administrative boards.

"As illustrations of the proper exercise of the power of Congress to delegate authority to establish rules and regulations may be mentioned: Acts permitting an executive officer to establish rules as to the navigation of particular waters or of canals owned by the United States; an Act permitting the Secretary of War to determine the amount of water that can safely be taken from the Great Lakes; Acts sanctioning the establishment of rules and regulations regarding aviation, aircraft, and radio; Acts authorizing the President of the United States to make rules and regulations to carry into effect both the law for calling out the Militia and the Selective Draft Law; an Act authorizing the President to determine differences in cost of production here and abroad and to increase or decrease tariff rates to equalize the cost of production; the income tax provisions of the Tariff Act of 1913 conferring certain powers on the Secretary of the Treasury and authorizing him to establish certain standards as to imports on the recommendation of a board of experts; and an Act giving authority to the Federal Reserve Board to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds.

"Instances may be given of the operation of the same principle under State statutes, such as the empowering of boards and commissioners to regulate the taking of fish or the construction of fishways; and the regulations prescribed under legislative authority by boards of health, humane societies, cemetery associations, police commissioners, medical examiners, dental examiners, optometry boards,

pharmacy boards, civil service commissioners, insurance boards, banking commissioners or superintendents, drainage and irrigation commissioners, agricultural boards, school boards, and State railway commissions.

"242. Powers Delegated to Administrative Boards.—There are no constitutional objections arising out of the doctrine of the separation of the powers of government to the creation of administrative boards empowered within certain limits to adopt rules and regulations and authorized to see that the legislative will expressed in statutory form is carried out by the persons or corporations over whom such board may be given administrative power. Boards and commissions of this character do not exercise any of the powers delegated to the Legislature. They do not make any laws. They merely find the existence of certain facts, and to these findings of fact the law enacted by the Legislature is applied and enforced. * * *

" * * * Nor is such power unlawfully delegated by a statute providing for the creation of a board of censors which is to examine and censor, as a condition precedent to exhibition, motion picture films which are to be publicly exhibited and displayed in the State and is to pass and approve only such films as are, in its judgment, of a moral, educational, or amusing and harmless character, or by a statute under which motion picture films may not be exhibited within the State unless they have first been examined by the superintendent of public instruction and approved as moral and instructive, and not tending to debase or corrupt the morals, his disapproval being reviewable by a commission consisting of the governor, attorney general, and secretary of state.

"Many such administrative bodies or commissions now exist, and with the increasing complexity of modern gov-

ernment they seem likely to increase rather than diminish. A few examples are boards of health, boards of equalization, railroad rate commissions, and public utility commissions. Similarly, broad powers in ascertaining wages and hours of employment of women may be delegated to a commission, and such powers granted to parole boards and highway commissions have been sustained. * * * "

See Butterfield v. Stranaham, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Monongahela Bridge Co. v. United States, 216 U. S. 177, 30 Sup. Ct. 356, 54 L. Ed. 435; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; St. Louis I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 281, 52 L. Ed. 1061; United States v. Chemical Foundation, 272 U. S. 1, 47 Sup. Ct. 1, 71 L. Ed. 131; Federal Radio Commission v. Nelson Brothers Bond & Mtg. Co., 289 U. S. 266, 53 Sup. Ct. 627, 77 L. Ed. 1166; Hampton & Co. v. United States, 276 U. S. 394, 48 Sup. Ct. 348, 72 L. Ed. 624.

Likewise it was said in Vol. 16, Corpus Juris Secundum, page 354, and at pages 379-80:

"*Inspection.*—The Legislature may authorize the appointment of officers whose duty it shall be to make inspections for the purpose of ascertaining whether or not certain laws are being complied with, and may authorize them to make such rules and regulations as may be reasonably adapted to securing an efficient inspection and the enforcement of the law. However, a rule or regulation made by such an officer which is not confined to methods of procedure and to the discharge of administrative duties imposed by the statute, but which is an attempted exercise of legislative power, is void. * * *

*"Public Health and Safety.* It is the function of the Legislature, as a part of its police power, to make laws for the protection of the public health, and the power to make such laws, or laws for the public safety, may not be delegated to an executive officer or board. The Legislature may, however, enact laws in general terms for the public health or safety, and vest in administrative agencies a large measure of discretion in enforcing them, it being sufficient that a definite policy be established for their guidance. Thus, the Legislature may give such agencies authority to make reasonable rules, regulations, or orders which shall have the effect of law, and to determine facts on which the operation of a statute depends. Such an agency may not itself prescribe a penalty for the violation of its regulations, but it is competent for the Legislature to prescribe a penalty for the violation of rules and regulations thereafter made by the executive agency."

The Legislature has the power to regulate trades or professions operating directly on the person, upon the theory that their operation affects the health, comfort, safety and public welfare of the public, and especially is this true as to the occupation of a barber or beauty culturist. Vol. 7 Am. Juris., pages 613-14, par. 2, treating these occupations, says:

"GENERALLY.—* * *. The occupation of barber or beauty culturist is embraced in this general principle; it is a lawful business, yet it is an occupation, which, because of its intimate relation to the public health, is within that class of trades, professions, or callings which may, under the police power, be regulated by law without depriving a citizen of his natural rights and privileges guaranteed by fundamental law; those who are engaged therein are subject to regulations which require barbershops and beauty parlors to be

operated in a clean and sanitary manner and by competent operators, to the end that the public may be protected against the spread of communicable diseases. * * *

"What regulations shall be made are largely questions for the legislative body to determine; and unless those made are unreasonable and extravagant in their nature and purpose, or arbitrarily interfere with or destroy the property or personal rights of citizens, they will be sustained by the courts, even though they may be unwise, inexpedient, or place a needless restriction upon those who desire to learn the barber's trade. The Legislature cannot, however, under the guise of its police power, impose upon barbershops and beauty parlors unreasonable, capricious, or arbitrary regulations having no relation to the public health or welfare or, under the guise of regulation, destroy that profession. * * * "

Section 1 of Chapter 16800, Acts of 1935, among other things, provides that it shall be unlawful for any person to practice or teach beauty culture without first obtaining a certificate of registration as a registered beautician. It is likewise made unlawful to operate a school of beauty culture unless the school is under the direct supervision and management of a registered beauty culture teacher. Section 2 of the Act defines the practice of beauty culture. Section 3 prohibits the practice of beauty culture, independently, on the part of a junior operator, but it is lawful for them to practice under the immediate supervision of a registered beautician. Section 5 prescribes the qualifications of persons to receive a certificate of registration to practice beauty culture in Florida. Section 6 likewise prescribes the qualifications of persons to receive a certificate of registration as a registered junior operator. Sub-section (e) of Section 6 makes it mandatory upon the defendant Board to require evidence of the good health of an appli-

cant for a certificate of registration or as a junior operator. If the applicant fails to pass a satisfactory examination, then he or she is required to complete a course of study and practice of not less than 250 hours to be completed within three months in a school of beauty culture approved by the Board prior to applying for another examination.

Section 7 provides that no school of beauty culture shall be approved unless the instructors are registered beauty culture teachers and one of which shall be a licensed physician. No student shall be enrolled who has not completed at least the eighth grade of grammar school, or its equivalent, and the school shall possess apparatus and equipment sufficient to teach beauty culture to the students enrolled and a student shall not be permitted to graduate who has not received instruction and practice of not less than 1,000 hours, and the course of study that shall be taught in the school is prescribed therein.

Section 25 of the Act makes it unlawful for beauticians or operators to knowingly practice beauty culture: (a) while such person has an infectious, contagious or communicable disease; (b) no shop shall operate without hot and cold running water; (c) and no towel previously used upon a patron can be used upon another patron. Other rules and regulations appear and it further provides that the State Board of Beauty Culture Examiners shall have power to make other rules and regulations and prescribe other sanitary requirements in addition to the foregoing in the aid of furtherance of the provisions of this Act subject to the approval of the State Board of Health. It is shown by the record that the State Board of Health has approved and confirmed the two rules, *supra.*

The age, health, character and educational qualifications of applicants for certificates of registration to practice

beauty culture, as well as certificates for junior operators
to practice in Florida, as required by the Act, were in-
tended on the part of the Legislature to prevent the spread-
ing of communicable diseases and protect the public gen-
erally from insanitary and unhealthy conditions that may
possibly exist in a beauty shop, and likewise prescribed high
standards looking to the betterment of health and sanita-
tion and advancement of the welfare of the citizens of
Florida. One of the methods employed to obtain these
objectives was to maintain a supervision over the beauty
shops, the apparatus and equipment used therein, the health
of the beautician licensed to practice and the students de-
siring to become licensed, and to determine that each person
should not have infectious, contagious or communicable
diseases.

The health and welfare of the people of Florida were in
the mind of the Legislature when it prescribed the minimum
educational requirements of a student to take up the study
of beauty culture and the schools attended by the students
whose training and occupation required them to deal per-
sonally with the general public. These schools on the ap-
proved list were under the supervision and control of the
Board as to health of the students enrolled, their educa-
tional qualifications, the school's course of study and the
teachers and instructors therein, coupled with the apparatus
and appliances used to prepare the students, are indirectly
and ultimately items considered in promoting the health
and sanitation of the people of Florida.

If a school is crowded with pupils and their instruction
is neglected, or if the apparatus or equipment of the school
is inadequate, or if the students have communicable diseases,
or if the teachers or instructors are not qualified to teach,
it appears beyond question that these several items affect the

health, sanitation and welfare of the people and the rules here challenged being adopted or promulgated for the sole purpose of promoting these ends, it appears that the same are reasonable and within the power of the Board to adopt or enact under Chapter 16800, Acts of 1935, Laws of Florida.

It is contended here that the enforcement of these rules has the effect of destroying the school or the established business of the plaintiff. While this contention may be true, it is well established that the possession and enjoyment of all rights are subject to control or regulation under the police power. In the case of City of Miami Beach v. The Texas Co., 141 Fla. 616, 194 So. 368, it was said:

"While constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power and persons and property are subject to restraints and burdens necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am. Jur., page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population or other causes, become a menace to the safety and public welfare and the continuance thereof must yield

to the public good. 11 Am. Jur., page 1044, par. 284. The determination of what businesses are affected with a public interest is primarily for the Legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro. United Theatre Ticket Offices v. Banton, 273 U. S. 418, 47 Sup. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation. See Mutual Loan Co. v. Martell, 222 U. S. 225, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529."

The final decree appealed from is hereby reversed with directions for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, BUFORD and THOMAS, J. J., concur.

TERRELL, C. J., and BROWN, J., dissent.