CHARLES LEE, *d. b. a.* LEE SCHOOL OF BARBERING, AND OTHERS v. NICK DELMONT AND OTHERS (BOARD OF BARBER EXAMINERS) AND ANOTHER.[1]

March 18, 1949.

No. 34,735.

[1]Reported in 36 N. W. (2d) 530.

*J. A. A. Burnquist,* Attorney General, and *Robert F. Koch,* Special Assistant Attorney General, for appellants.

*Larson, Loevinger & Lindquist,* for respondents.

*William D. Gunn* and *Frederick P. Memmer* filed a brief as *amici curiae* on behalf of the State Association of Journeymen Barbers and the State Association of Master Barbers respectively.

MATSON, JUSTICE.

In declaratory judgment proceedings, defendants, except the attorney general, appeal from a judgment enjoining the enforcement of M. S. A. 154.065 and 154.07 and declaring said statutory sections unconstitutional as constituting unreasonable restraints of personal liberty and of the use of property contrary to the due process clauses of the state and federal constitutions and as involving an

invalid delegation of legislative power to those defendants who are members of the state board of barber examiners.

Plaintiffs Charles Lee and Carl Krausmann are owners and operators of the Lee School of Barbering and the Moler Barber College respectively. The other plaintiffs are all students of the Lee School of Barbering. No unregistered teacher employed, or desiring to be employed, in either school is a party to this action. Defendants, other than the attorney general, are members of the state board of barber examiners, hereinafter called the board.

On June 29, 1947, one of two registered teachers employed by plaintiff Lee died. Twenty-seven students were then enrolled in his school. Lee was unable to find another registered teacher or any barber of the qualifications required for certification and approval by the board pursuant to § 154.065. He thereupon employed an individual whom he believed to be fully qualified to teach but who had not been certified and who was not qualified for certification by the board under said statute. On September 25, 1947, the board, for the reason that the Lee school had only one certified teacher, demanded that Lee limit the enrollment of students in his school to the number of 15 in compliance with § 154.07, which provides that in barber schools "there shall be one instructor to every 15 students or minor fraction in excess thereof."

Plaintiff Krausmann is himself the only registered teacher in the Moler Barber College. Although the school has all the other facilities for teaching more than 15 students, Krausmann has been instructed and warned by the board not to enroll more than 15 students.

The other plaintiffs, all of whom are students enrolled in the Lee school, were on October 13, 1947, notified by the board that, in determining their qualifications for the practice of barbering, they would thereafter be given no credit for the time spent at the Lee school, for the sole reason that said school had more than 15 students for each teacher.

Section 154.07, originally enacted in 1927 and amended in 1929, 1935, and 1945,[2] pertains to the qualification of students and the regulation of barber schools. Section 154.065, enacted in 1945, regulates the qualification, examination, and certification of barber teachers and matters ancillary thereto.[3]

Aside from the facts hereinbefore summarized, the trial court, under paragraphs XI, XII, and XIII of its findings of fact, specifically found:

## "XI.

"The trade of barbering and also the teaching of barbering are both lawful, useful and harmless occupations *which do not require any professional education.* The operation of a barber school or college is a lawful, useful and harmless business. The ownership of a barber college does not require any professional or technical education or training. [Italics supplied.]

## "XII.

"The provisions of section 154.065 and section 154.07 of Chapter 154 of the 1945 Minnesota Statutes taken together operate to limit and restrict the right of the plaintiffs herein as well as of other person [sic] similarly situated to engage in the lawful, useful and harmless occupations of owning and operating a barber college, teaching barbering, and preparing to engage in the trade of barbering.

## "XIII.

"The provisions of section [M. S. A.] 154.065 and section 154.07 * * * taken together are neither necessary nor appropriate to the protection of the public health, safety or welfare and do not have a substantial relation to the protection of the public health, safety and welfare."

An appellate court will not be bound by, and will review, the findings of the trial court, even though they be supported by the weight of evidence, if such findings are manifestly controlled or in-

[2]See, L. 1927, c. 316; L. 1929, c. 270; L. 1935, c. 229; L. 1945, c. 160.
[3]See, L. 1945, c. 159.

fluenced by errors of law. In re Trust Under Will of Holden, 207 Minn. 211, 227, 291 N. W. 104, 112; 3 Am. Jur., Appeal and Error, § 904. Here, the quoted findings (paragraphs XI, XII, and XIII)— even as supplemented by the trial court's memorandum—consist either of conclusions of law or of factual determinations controlled by erroneous legal principles. Apparently it has been assumed that the statutory powers conferred on the board are not subject to the limitation that they must be exercised in a reasonable manner. Contrary to the prior holding of this court, the findings are also to the effect that the trade of barbering, the teaching thereof, and the operation of a barber school or college are lawful, useful, and harmless occupations *which do not require any professional or technical education.* Even though the type of training required may not justify the use of the word "professional," nevertheless, it is clear that it is of a technical nature. In State v. Zeno, 79 Minn. 80, 84, 81 N. W. 748, 749, wherein a statute regulating the trade of barbering was held constitutional as being within the police power of the state, this court said:

"* * * The public is interested in his competency and qualifications, and it is eminently proper that there be thrown around the calling protection from intrusion by incompetents, and others inimical to the public good. * * *

"* * * the health of the citizen, and protection from diseases spread from barber shops conducted by unclean and incompetent barbers, fully justify the law. It is a fact of which we must take notice that the people of today come in contact with, and engage the services of, those following the occupation of barber, as much as, if not more than, any other occupation or profession. We must take notice of the fact, too, that the interests of the public health require and demand that persons following that occupation be reasonably familiar with, and favorably inclined towards, ordinary rules of cleanliness; that diseases of the face and skin are spread from barber shops, caused, no doubt, by uncleanliness or the incompetency of barbers. *We must take notice of the fact that to attain*

*proficiency and competency as a barber requires training, study, and experience,—training in the art, and study and experience in the management and conduct of the calling.* A design and purpose to protect the public from injurious results likely to follow from such conditions is the foundation of statutes like this. And, as we must take judicial notice of the foregoing facts, the foundation for this law is apparent. And it may be said, further, that *there is as much reason for a law of this kind as to barbers as there is for such a law as to dentists, pharmacists, lawyers, and plumbers.* It is enacted in the interests of the public health and welfare, and we sustain it." (Italics supplied.)

The importance of technical training from the standpoint of public health is illustrated by the case of Lincoln Nat. L. Ins. Co. v. Jensen, 99 Ind. App. 397, 189 N. E. 169, wherein it was found that the insured died from a streptococcic infection of a cut on the chin received while being shaved in a Minnesota barbershop. A requirement for the systematic and intelligent practice of cleanliness and sanitation by barbers to prevent the spreading of disease and the development of infection is a part of the universal trend to safeguard public health through preventive medicine. People v. Stiegler, 160 Misc. 463, 290 N. Y. S. 732.[4]

We start, therefore, with the established principle that the trade of barbering, as well as the teaching thereof and the operation or management of a barber school, requires technical training, study, and experience in order to safeguard the public health and welfare, and that the regulation thereof is a proper exercise of the police power. We are concerned with only two issues: (1) Has the legislature by its enactment of §§ 154.065 and 154.07 provided a remedy which reasonably tends to accomplish the purpose of protecting the public health and welfare without going beyond what is reasonably necessary to accomplish that purpose?[5] (2) Do the regulatory powers conferred upon the board involve a delegation of legislative

[4]See, State v. Lockey, 198 N. C. 551, 152 S. E. 693; People v. Logan, 284 Ill. 83, 119 N. E. 913; 7 Am. Jur., Barbers and Beauty Specialists, § 2.

[5]See, 1 Dunnell, Dig. & Supp. § 1604.

108

power?[6] Only if the first issue is answered in the negative or the second in the affirmative do we have unconstitutional legislation.

■ It is not for the courts to question the wisdom or expediency of a police regulation. The judicial function is merely to determine (1) if the ostensible protective purpose of a purported police regulation relates to the public welfare and not merely to a private interest, and (2) if the remedy adopted is designed to accomplish that purpose without going beyond the reasonable demands of the occasion so as to arbitrarily and unnecessarily interfere with personal and property rights in contravention of either the state or federal constitutions. In recognition of the established proposition that to protect public health—which is here synonymous with the public welfare—the trade of barbering, whether it be in the practice or the teaching thereof, requires a certain technical training, study, and experience, can we say that the regulatory provisions of §§ 154.065 and 154.07 are reasonably designed to accomplish their purpose without going beyond the reasonable needs of the occasion? Section 154.065 provides that no person may be certified as a teacher of barbering unless he (1) is at least 25 years of age; (2) is a high school graduate or possessed of an equivalent education; (3) has qualified for a teacher's vocational certificate; (4) has at least five years' experience as a barber or the equivalent thereof; and (5) has passed an examination in subjects required by statute for the licensing of barbers in Minnesota. In the light of the judicial function as distinguished from the legislative, can we say there is no reasonable relation between an age requirement of 25 years and the accomplishment of the fundamental purpose of the act? The legislature might reasonably conclude that a teacher ought to have a certain maturity in order to command the confidence and respect of students who are to be instructed in and impressed with the need for strict compliance with sanitation requirements. A similar reason justifies the provision that a teacher must have at least five years' practical experience. The requirement of a high school education, as well as that as to the qualifications for a teacher's vocational

[6]See, *Id.* § 1597.

certificate, seems reasonable as a means of securing teachers who are equipped to understand and to teach effectively the necessary subjects. Perhaps these educational qualifications are in excess of an acceptable minimum standard, but our judicial task is not to ascertain the lowest possible minimum requirement necessary to accomplish a certain purpose, but to determine if the statutory requirements go so far beyond what is reasonably necessary as to be arbitrary. The qualifications for barber teachers do not seem extravagant or fanciful, but they reasonably appear to be designed to give students not only a practical knowledge of sanitation methods but also an adequate mastery of their trade to enable them reasonably to earn an income sufficient for the maintenance of a sanitary shop. See, Gillett v. Florida Univ. of Dermatology, Inc. 144 Fla. 236, 197 So. 852. In State v. McMasters, 204 Minn. 438, 283 N. W. 767, we held that the due process clauses of the state and federal constitutions are not contravened by the fixing of minimum prices for the services of barbers, on the ground that such price regulations are reasonably related to public health.

■ We come to the final provision that a teacher must pass an examination in subjects prescribed by statute for licensed barbers. See, M. S. A. 154.09. These subjects, which are required to be taught in all barber schools, are enumerated in § 154.07 as follows:

"* * * scientific fundamentals for barbering, hygiene, practical study of the hair, skin, muscles, and nerves, structure of the head, face, and neck, elementary chemistry relating to sterilization and antiseptics; diseases of the skin, hair, glands, massaging and manipulating the muscles of the face and neck, haircutting, shaving, and trimming the beard."

It is only reasonable that a teacher should be able to pass an examination in the very subjects which he is to teach and a knowledge of which is required before a barber may be licensed, unless the subjects are unreasonable from the standpoint of the trade as a whole. We must therefore consider the reasonableness of the required subjects, not merely from the standpoint of the teacher, but also from

that of the barber schools, the students, and the barber trade generally. The subjects may seem extravagant in their scope and implications unless we bear in mind that where a board or commission has been empowered to make regulations and to conduct examinations in the furtherance of the police power, the law is to be interpreted as though it conferred only the power and right to make *reasonable* regulations and to conduct *reasonable* examinations. See, Sabre v. Rutland R. Co. 86 Vt. 347, 366, 85 A. 693, 701, Ann. Cas. 1915C, 1269. Obviously, if reasonable examinations are given, there is nothing unreasonable in the scope and variety of the subject matter specified. Whether the board exercises its powers and rights in a reasonable manner presents another question, which we shall discuss in connection with the alleged delegation of legislative power.

■ We have no justiciable issue involving certain provisions of § 154.07 to the effect (1) that a person may own and operate a barber college only if he has ten years' continuous experience as a barber, and (2) that a barber college may be conducted and operated only if located in one building or in connected buildings. Likewise, we have no justiciable issue with respect to the provision of § 154.06 which in effect denies the right to follow the barber trade to all future applicants who are not graduates of a barber college. No litigant herein has asserted any present, immediate, or reasonably imminent claim of right to own and operate a barber school without having ten years' continuous experience, or to own, operate, or attend a barber school located in two or more disconnected buildings, and no litigant has asserted a similar claim of right to become a licensed barber without barber school training. Issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable. Neither the ripe nor the ripening seeds of a controversy are present. Borchard, Declaratory Judgments (2 ed.) 56. Regardless of the nature of the proceeding, whether it be by way of relief through a declaratory judgment or otherwise, a litigant who questions the constitutionality of a statutory provision, must, in order to invoke the

jurisdiction of the court, be able to show that the statute is, or is about to be, applied to his disadvantage. He must show an injury or at least one that is imminent.[7]

■ There is likewise no justiciable issue with regard to the other provisions of § 154.07, with the single exception of the requirement that in barber schools "there shall be one instructor to every 15 students or minor fraction in excess thereof." We have no finding that the student plaintiffs are affected adversely or otherwise by any of these provisions or that such provisions are, or are about to be, applied to their disadvantage. Although the trial court found that the individual whose teaching services the plaintiff Charles Lee had retained is not qualified to be certified *as a registered teacher,* there is no finding that he is not a registered barber or that he is not qualified for such registration. In the absence of such a finding, conclusions of law to the effect that Charles Lee, or any other plaintiff, is adversely affected by the other provisions are not supported. Upon appeal from a judgment, the court will consider whether the conclusions of law are justified by the findings, although no bill of exceptions or a proper motion for a new trial are involved.[8] No justiciable issue arises from mere conclusions of law which have no support in the facts.

■ We find nothing unreasonable or arbitrary in the statutory requirement that a barber school may not enroll more than 15 students for each instructor. Obviously, the teaching of a trade such as barbering goes beyond mere theoretical instruction and involves a practical application in which the individual student must be personally supervised. We cannot overlook that barber students practice on members of the public. If the practical instruction is made inefficient by giving the instructor the supervision of too many

[7]State ex rel. Smith v. Haveland, 223 Minn. 89, 94, 25 N. W. (2d) 474, 478, 174 A. L. R. 544; State ex rel. Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 232 N. W. 737, 71 A. L. R. 1190; Borchard, Declaratory Judgments (2 ed.) 50, 51; 3 Dunnell, Supp. § 4988a.

[8]Schreiber v. Scott, 163 Minn. 422, 204 N. W. 575; Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461; Elton v. N. W. Nat. L. Ins. Co. 192 Minn. 116, 255 N. W. 857; 1 Dunnell, Dig. & Supp. §§ 344 and 392.

students, sanitation requirements will suffer, to the detriment of public health. Gillett v. Florida Univ. of Dermatology, Inc. 144 Fla. 236, 197 So. 852.

■ Clearly, the statutory provisions involved herein reasonably tend to accomplish the purpose of safeguarding the public health and welfare without going beyond the reasonable demands of the occasion. We find no contravention of U. S. Const. Amend. XIV, or Minn. Const. art. 1, §§ 2 and 7. Persons, and their rights of liberty and property, are subject to the restraints and burdens which the legislature imposes upon them for the common good, and, although the exercise of a police power may inconvenience an individual or group and may curtail the use, or depreciate the value of property, if the measure reasonably tends to accomplish the purpose of its enactment without unreasonably or arbitrarily exceeding the needs of the occasion, it is a valid exercise of the police power. State ex rel. Pavlik v. Johannes, 194 Minn. 10, 259 N. W. 537; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487; 1 Dunnell, Dig. & Supp. §§ 1603, 1604; 11 Am. Jur., Constitutional Law, §§ 259, 261.[9]

■ We come to the final issue. Do the regulatory powers conferred upon the board constitute a delegation of legislative power contrary to Minn. Const. art. 3? The answer is "No." It is elementary that the legislature—except where expressly authorized by the constitution, as in the case of municipalities[10]—cannot delegate purely legislative power to any other body, person, board, or commission. State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 299, 37 N. W. 782, 787. Although purely legislative power cannot be delegated, the legislature may authorize others to do things (insofar as the doing involves powers which are not exclusively legislative) which it might properly, but cannot conven-

[9]The court has not overlooked Schneider v. Duer, 170 Md. 326, 184 A. 914, and certain other cases to the contrary. We do not concur in their reasoning and conclusions.

[10]See, Minn. Const. art. 4, § 36; Board of Education v. Erickson, 209 Minn. 39, 42, 295 N. W. 302, 304.

iently or advantageously, do itself. 1 Dunnell, Dig. & Supp. §§ 1597, 1600. It does not follow, because a power may be wielded by the legislature directly, or because it entails an exercise of discretion and judgment, that it is exclusively legislative. Annotation, 79 L. ed. (U. S.) 487. Pure legislative power, which can never be delegated, is the authority to make a complete law—complete as to the time it shall take effect and as to whom it shall apply—and to determine the expediency of its enactment. Although discretion to determine when and upon whom a law shall take effect may not be delegated, the legislature may confer upon a board or commission a discretionary power to ascertain, *under and pursuant to the law,* some fact or circumstance upon which the law by its own terms makes, or intends to make, its own action depend.[11] The power to ascertain facts, which automatically brings a law into operation by virtue of its own terms, is not the power to pass, modify, or annul a law. If the law furnishes a reasonably clear policy or standard of action which controls and guides the administrative officers in ascertaining the operative facts to which the law applies, so that the law takes effect upon these facts by virtue of its own terms, and not according to the whim or caprice of the administrative officers, the discretionary power delegated to the board or commission is not legislative. Dimke v. Finke, 209 Minn. 29, 295 N. W. 75; Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. ed. 446. Legislation must often be adapted to complex conditions involving a host of details with which the legislature cannot deal directly. In the Panama Refining Co. case, the court, speaking through Mr. Chief Justice Hughes, said (293 U. S. 421, 55 S. Ct. 248, 79 L. ed. 459):

"* * * The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies

[11]State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 299, 37 N. W. 782, 787; Schmidt v. Gould, 172 Minn. 179, 215 N. W. 215; J. W. Hampton, Jr. & Co. v. United States, 276 U. S. 394, 408, 48 S. Ct. 348, 352, 72 L. ed. 624, 630.

and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply."

The policy of the law and the standard of action to guide the administrative agencies may be laid down in very broad and general terms. Annotation, 79 L. ed. (U. S.) 489. What is a sufficiently definite declaration of policy and standard obviously varies in some degree according to the complexity of the subject to which the law is applicable.[12] The discretionary power to ascertain the operative facts normally carries with it the power to make rules and regulations pursuant to which the power is exercised. Annotation, 79 L. ed. (U. S.) 489-491.

In the light of these principles, we find no delegation of legislative power. The statutory provisions indicate clearly the subjects in which both teachers and students must attain proficiency. Obviously, the legislature cannot provide a crystal ball for the automatic determination of the proficiency of each examinee. Certain discretionary powers must be conferred on ministerial officers for the preparation and conduct of examinations. Let us bear in mind again that whenever a law confers upon a board or commission the power to make regulations or to conduct examinations it is to be construed as if it only conferred the power and the right to make *reasonable* regulations and to conduct *reasonable* examinations. We have as a result a statutory standard of reasonable proficiency in certain specified subjects. Much ado has been futilely made about the failure of the board to promulgate rules and regulations as required by the statute and of the possibility that the board might arbitrarily deny a registration certificate for no better reason

[12]See, New York C. S. Corp. v. United States, 287 U. S. 12, 53 S. Ct. 45, 77 L. ed. 138, wherein the statutory standard or criterion of "in the public interest" as related to the specific question of the adequacy of transportation service was held to be a sufficient standard for the guidance of the interstate commerce commission in authorizing the acquisition of the control of one carrier by another.

than that the applicant is suffering from a temporary cold. It is the nature of the power, and not the liability of its abuse or the manner of its exercise, which determines the validity of its delegation. A power may be abused even though exercised directly by the legislature. State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 298, 37 N. W. 782, 786; see Annotation, 79 L. ed. (U. S.) 487. The law provides an ample remedy for the abuse of a power without attacking the validity of its delegation. See, State ex rel. Krausmann v. Streeter, 226 Minn. 458, 33 N. W. (2d) 56.

The judgment of the trial court is reversed.

Reversed.

[1]Reported in 36 N. W. (2d) 521.