*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0065**

Anthony Hernandez, et al.,
Respondents,

vs.

Minnesota Board of Teaching,
Appellant.

**Filed August 8, 2016
Affirmed in part and reversed in part
Worke, Judge**

Ramsey County District Court
File No. 62-CV-15-1979

Ll. Rhyddid Watkins, Faegre Baker Daniels LLC, Minneapolis, Minnesota; and

Nathan R. Sellers, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, Minnesota (for respondents)

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Oliver J. Larson, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the district court's denial of its motion to dismiss respondents' declaratory-judgment action, arguing that the district court did not have

jurisdiction over respondents' claims and that respondents lack standing to pursue their asserted claims. Appellant also argues that the district court exceeded its authority in ordering injunctive relief. We affirm the district court's denial of appellant's motion to dismiss, but we reverse the district court's injunctive relief.

**FACTS**

Appellant Minnesota Board of Teaching (board) is responsible for licensing teachers in Minnesota. Respondents (applicants) are individuals whose applications for teaching licenses in Minnesota were denied or conditionally granted. Applicants' circumstances vary: some had their applications submitted through the licensure via portfolio process[1] summarily rejected; another was granted a license with "inexplicabl[e]" conditions; another was granted a "limited" license without an explanation for the denial of the standard-license application or information on how to qualify for a standard license; another had a request for an administrative hearing rejected; and many were directed to Minnesota colleges to complete coursework required by the college.

On April 2, 2015, applicants filed a complaint[2] alleging that the board had a "practice of consistently refusing to follow Minnesota law" and "arbitrarily den[ying] licenses to well-qualified teachers who clearly meet the statutory requirements." In

---

[1] Licensure via portfolio is a method for teaching licensure in which an applicant demonstrates competence via portfolio. Minn. Stat. § 122A.21, subd. 2 (Supp. 2015). Licenses were granted through the portfolio process until the board discontinued the process and summarily denied all applications. It is unclear as to why the board discontinued the portfolio process.
[2] Applicants twice amended their complaint to include additional applicants.

seeking injunctive and declaratory relief, applicants alleged that the board "refused to provide any guidance on how it interprets and applies the statutory requirements for a Minnesota teaching license," applied arbitrary and inconsistent standards, and treated similarly situated applicants differently. Count 1 alleged that the board violated applicants' procedural due-process rights; Count 2 alleged that the board violated applicants' equal-protection and due-process rights by delegating its authority to Minnesota teacher-preparation programs; Count 3 alleged that the board abused its quasi-legislative authority, which affected the rights of the general public by wrongfully ignoring a legislative mandate to create a streamlined application procedure for out-of-state applicants; and Count 4 alleged that the board frustrated a meaningful administrative review,[3] leaving applicants without remedies.

The board moved to dismiss the complaint, pursuant to Minn. R. Civ. P. 12.02(a), (e), claiming that the district court did not have subject-matter jurisdiction. Applicants moved for partial summary judgment, seeking a declaratory judgment that the board violated Minnesota law by refusing to accept applications for licensure through the portfolio process, and an injunction requiring the board to reinstate the process and to promulgate rules governing the process.[4]

---

[3] Minnesota Rule 8710.0900 (2015) guarantees applicants the right to an administrative appeal of a license denial.

[4] There is no longer a controversy regarding entitlement to the licensure via portfolio process. *See* Minn. Stat. § 122A.21, subd. 2(d) (requiring the board to notify an applicant whether a portfolio was approved, and if not, immediately inform the applicant how to revise the portfolio to successfully demonstrate competence). The board does, however, challenge the district court's injunctive relief as it relates to the portfolio process.

Following a hearing, the district court granted applicants' motion for partial summary judgment, ruling that the board violated the Minnesota statute regarding licensure by portfolio by failing to operate the program. The district court ordered the board to reinstate the portfolio program, develop rules and procedures for operation of the program, and to provide detailed reports at a compliance review hearing.[5]

The district court denied the board's motion to dismiss for lack of jurisdiction, ruling that it had jurisdiction because the board's actions are quasi-legislative and applicants have no administrative remedy available. This appeal follows.

## D E C I S I O N

### *Jurisdiction*

The board argues that the district court erred in determining that it had jurisdiction because applicants' claims are subject to certiorari jurisdiction of this court. Subject-matter jurisdiction refers to a court's authority to consider an action or issue a ruling that will decide the issues raised by the pleadings. *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 432 (Minn. App. 1995), *review denied* (Minn. May 31, 1995). To the extent that a review of subject-matter jurisdiction involves consideration of constitutional and statutory bases for a court's authority, it presents a question of law for this court to decide de novo. *See Neighborhood Sch. Coal. v. Indep. Sch. Dist. No. 279*, 484 N.W.2d 440, 441 (Minn. App. 1992), *review denied* (Minn. June 30, 1992).

---

[5] Again, the board does not challenge the ruling that the board reinstate the portfolio program. The board challenges the district court's ruling that it adopt rules and attend compliance hearings.

The board argues that applicants' lawsuit is based on assertions that the board denied individual licenses and administrative processes and, as such, the district court lacks subject-matter jurisdiction because applicants seek review of the board's "quasi-judicial" decisions. Applicants contend that they are not claiming entitlement to licenses, asking the district court to review their qualifications, or asking the district court to order the board to issue licenses, as such, they are challenging only the board's "quasi-legislative policy decisions." We agree with applicants.

"Certiorari is an extraordinary remedy only available to review judicial or quasi-judicial proceedings and actions; conversely, it is not available to review legislative or administrative actions."[6] *Minn. Ctr. for Envtl. Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn. 1999) (quotation omitted). Quasi-judicial actions include the following: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Id.*

Our supreme court has stated that certiorari jurisdiction does not extend to "every administrative decision which is based on evidentiary facts developed through investigation." *Meath v. Harmful Substance Comp. Bd.*, 550 N.W.2d 275, 277 (Minn. 1996). Were that the case, the supreme court reasoned, "then almost every administrative decision is 'quasi-judicial' even though few such decisions adjudicate any right or

---

[6] Note the distinction between "administrative decisions" and "administrative acts." *See Sellin v. City of Duluth*, 248 Minn. 333, 337, 80 N.W.2d 67, 70 (1956) (explaining that "a particular act may be administrative for the purpose of deciding which branch of the government it comes under but judicial for the purpose of allowing review by certiorari").

obligation of [the] contending parties." *Id.* Importantly, a challenge to an agency's failure to render a decision "is not a challenge to a *decision*—quasi-judicial or otherwise." *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 289 n.2 (Minn. 2013). Moreover, "[u]nless a quasi-judicial decision itself is being challenged, certiorari is not required." *Lifespan of Minn., Inc. v. Minneapolis Pub. Sch. Indep. Sch. Dist. No. 1*, 841 N.W.2d 656, 661-62 (Minn. App. 2014).

Applying these principles, we conclude that applicants are not challenging quasi-judicial decisions subject to exclusive certiorari jurisdiction. Applicants' allegations relate to the board's refusal or failure to apply standards required by statute in processing applications. Importantly, applicants do not challenge individual licensing decisions, nor do they request relief compelling the board to issue any licenses. Although some applicants received denials from the board that might have been subject to certiorari review, they are not challenging those individual decisions. There is no evidence in the record to show that applicants' claims involve the board's quasi-judicial function. The disputed claim is the practice of arbitrary refusal to consider applications of presumably qualified applicants.

Quasi-legislative actions involve the board's administrative power to "make policy, including rules or regulations, within the framework of an enabling statute." *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 770 (Minn. 2006). Applicants challenge the board's alleged policies and procedures for processing applications and providing administrative remedies. From this record, applicants challenge the board's quasi-legislative actions, which is properly challenged in district court.

6

*Justiciable*

The board also argues that applicants' claims are non-justiciable because "Minnesota courts do not have legal authority to adjudicate claims alleging generalized systemic failures."

The board challenges applicants' standing to state claims for anything other than individual injuries. Standing requires "that a party ha[ve] a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). A sufficient stake may exist if the party has suffered an "injury-in-fact" or if the legislature has conferred standing by statute. *Id.* The existence of a justiciable controversy is essential to jurisdiction; the question of jurisdiction is a legal one that is reviewed de novo. *In re Guardianship of Tschumy*, 853 N.W.2d 728, 733-34 (Minn. 2014).

Generally, a person suffers an injury in fact when the individual can show he or she has suffered some detriment that is different from damage or injury sustained by the general public. *Olson v. State*, 742 N.W.2d 681, 684 (Minn. App. 2007). An injury-in-fact involves harm that is "concrete and actual or imminent, not conjectural or hypothetical." *Hanson v. Woolston*, 701 N.W.2d 257, 262 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. Oct. 18, 2005). "Prudential limitations on standing additionally require courts to refrain from adjudicating abstract questions of wide public significance that amount to generalized grievances and are most appropriately addressed by the representative branches." *Id.* (quotation omitted). But applicants do not seek adjudication of a generalized grievance. Each applicant alleges a concrete, particularized,

7

and actual injury: each is unable to obtain review of their licensure applications under the applicable statutory provision, which results in their failure to obtain teaching licenses.

While an allegation in the complaint that the board has a "practice of consistently refusing to follow Minnesota law" and "arbitrarily den[ying] licenses to well-qualified teachers who clearly meet the statutory requirements" seems like a claim of wide public significance, applicants have alleged suffering concrete harm due to the board's actions. Therefore, applicants have standing to raise the claims in the complaint.

The board also claims that applicants' claims are not ripe because they are too abstract. Ripeness seeks to prevent courts' involvement "in abstract disagreements over administrative policies." *Leiendecker v. Asian Women United of Minn.*, 731 N.W.2d 836, 841 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. Aug. 7, 2007). If an issue involves only a hypothetical possibility, then the issue is not justiciable because "[n]either the ripe nor the ripening seeds of a controversy are present." *Lee v. Delmont*, 228 Minn. 101, 110, 36 N.W.2d 530, 537 (1949). A party must show a "direct and imminent injury." *State v. Colsch*, 284 N.W.2d 839, 841 (Minn. 1979); *see Lee*, 228 Minn. at 111, 36 N.W.2d at 537 (noting that to invoke a court's jurisdiction, a party must show actual or imminent injury).

The board claims that an allegation of a "systematic failure of the [b]oard to create a coherent scheme for licensing" cannot be ripe because it is an "abstract disagreement[] over administrative policies." But applicants have asserted actual injury by the board's alleged failure to follow a coherent application process. Applicants assert that the board fails to apply standards required by statute in processing applications and rendering

8

decisions. Because of this, applicants are unable to obtain teaching licenses and pursue teaching positions. As such, there is a causal connection between the injury and the complained-of conduct. If the board complied with the legislatively mandated requirements for licensure applications, applicants likely would have had their applications reviewed and either obtained a license or received an explanation for denial. Licenses are required to teach in Minnesota, without a license to pursue a teaching position, applicants are injured. Thus, applicants' claims are ripe.

### *Administrative remedy*

The board argues that the district court erred in determining that the district court had jurisdiction because applicants failed to exhaust available administrative remedies. Applicants contend that they are not required to exhaust administrative remedies for quasi-legislative and constitutional challenges.

An applicant denied a license or a renewal of a license is entitled to an administrative hearing. Minn. R. 8710.0900. This remedy is available to challenge the board's quasi-judicial decisions. As previously discussed, applicants are not challenging the board's quasi-judicial decisions.

The board cites a general requirement that, "before judicial review of administrative proceedings will be permitted, the appropriate channels of administrative appeal must be followed" to support its argument that applicants have administrative remedies available to them. However, the board fails to specify the administrative process applicants should have followed to challenge the board's consistent practice of "refusing to follow Minnesota law." Applicants do not need to exhaust all administrative

9

remedies for challenging license-application denials when they allege a declaratory judgment cause of action. *See Connor v. Twp. of Chanhassen*, 249 Minn. 205, 209, 81 N.W.2d 789, 794 (1957) ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." (quotation omitted)).

*Claims*

The board argues that the district court erred in determining that applicants state claims that are recognized by Minnesota law. Applicants raised constitutional claims in the complaint, alleging that the board violated their procedural due-process and equal-protection rights. Applicants are entitled to seek equitable relief in the form of a declaratory judgment to prevent violation of their constitutional rights. *See McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 337 (Minn. 2011).

Under the Uniform Declaratory Judgments Act (act):

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Minn. Stat. § 555.01 (2014). The act is to be "liberally construed and administered." Minn. Stat. § 555.12 (2014). It is "intended to settle and to afford relief from uncertainty with respect to rights, status, and other legal relations. It broadly authorizes courts to resolve such uncertainties whether or not further relief is or could be claimed." *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 271 N.W.2d 445, 447

10

n.2 (Minn. 1978) (citation and quotation omitted). Thus, applicants stated a valid claim under the act because they seek to have the district court declare their constitutional and statutory rights. This is true regardless of whether any other cause of action is viable.[7]

Because applicants sought a declaratory judgment, they have a claim recognized by Minnesota law and "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." *See* Minn. Stat. § 555.08 (2014).

### *Injunctive relief*

Finally, the board argues that the district court exceeded its authority by ordering injunctive relief requiring the board to engage in rulemaking and report its progress at compliance review hearings.

The district court determined that it had discretion to issue an order enjoining the board to promulgate rules to implement the portfolio program because the board is statutorily mandated to promulgate rules to implement the licensure via portfolio program. "[W]hen the district court grants an injunction based on its interpretation of a statute, our review of that issue is de novo." *Williams v. Nat'l Football League*, 794 N.W.2d 391, 395 (Minn. App. 2011), *review denied* (Minn. Apr. 27, 2011).

---

[7] Applicants also asserted a "non-delegation" claim, essentially alleging that the board is prohibited by statute from delegating review of out-of-state applications to Minnesota colleges. This claim is encompassed in applicants' declaratory-judgment cause of action.

The board correctly asserts that "injunction" is not a cause of action. *See Ryan v. Hennepin Cty*., 224 Minn. 444, 448, 29 N.W.2d 385, 387 (1947) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (quotation omitted)).

"The board must adopt rules to license public school teachers . . . ." Minn. Stat. § 122A.09, subd. 4(a) (Supp. 2015). Under Minn. Stat. § 122A.21, subd. 2(a), an applicant may use licensure via portfolio to obtain licensure "consistent with applicable [board] licensure rules." The board "*may* adopt rules . . . to implement section[] . . . 122A.21." Minn. Stat. § 122A.09, subd. 9 (2014) (emphasis added).

There is no requirement under section 122A.21, subdivision 2 that the board engage in rulemaking other than that required under section 122A.09, subdivision 4(a). *See Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012) (stating that courts cannot add words or meaning to a statute that the legislature omitted). The board is not required to promulgate rules specifically for licensure via portfolio because the legislature granted the board discretion in permitting it, but not requiring it, to adopt rules to implement that section.

Because the legislature has mandated the manner in which the board is to implement the licensure via portfolio program, the district court lacked authority to require further rulemaking and compliance reviews. Accordingly, we reverse all provisions of injunctive relief.

**Affirmed in part and reversed in part.**

12