Sinuon LEIENDECKER, Appellant,

v.

ASIAN WOMEN UNITED OF
MINNESOTA, et al.,
Respondents.

No. A06–959.

Court of Appeals of Minnesota.

May 22, 2007.

Stephen L. Smith, Carrie A. Doom, The Law Firm of Stephen L. Smith, PLLC, Minneapolis, MN, for appellant.

Britton D. Weimer, Blackwell Igbanugo, P.A., Minneapolis, MN, for respondents.

Considered and decided by DIETZEN, Presiding Judge; RANDALL, Judge; and HUDSON, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges a district court judgment dismissing her complaint against respondents. Appellant argues that the district court erred by concluding that the tort claims alleged in her complaint were barred because she failed to assert them as counterclaims in a prior lawsuit involving the same parties. Appellant also argues that the district court erred by concluding that her non-tort claims were barred because they were ripe when she answered respondents' third party complaint. We reverse and remand.

## FACTS

Respondent Asian Women United of Minnesota ("AWUM") is a nonprofit corporation established in 1994. AWUM is committed to ending violence against Asian women and children, empowering Asian women and girls, and building stronger and safer communities. Appellant Sinuon Leiendecker was AWUM's executive director from 1999 until she was terminated in February 2004.

During her tenure as executive director, Leiendecker raised concerns with AWUM's board of directors that it was operating in violation of its bylaws. In November 2003, Leiendecker learned that the board of directors, which included respondents Sushila Shah ("Shah") and Quoc–Bao Do ("Bao Do") and five other individuals ("old board"), passed a resolution to terminate Leiendecker's employment. Despite the resolution, however, the board continued to recognize appellant as its executive director.

A few weeks later, without notifying the old board, Leiendecker gathered some outside individuals not affiliated with AWUM to form a new board of directors ("new board"). The new board's first action was to attempt to remove the members of the old board.

In December 2003, the old board sent a letter to the Minnesota Department of Commerce, the Minnesota Attorney General, and others, alleging that Leiendecker had engaged in "serious mismanagement of agency funds and questionable conduct."

The new board subsequently filed a complaint against the old board for declaratory and equitable relief, contending that the old board had been operating illegally and had improperly discharged Leiendecker. The complaint sought a declaration that the old board was not validly elected and was not, therefore, entitled to act on behalf of the corporation. It also sought a declaration that the new board was properly created and that Leiendecker was validly elected. The old board, in turn, filed an answer and third-party complaint seeking declarations that (1) the new board acted improperly, (2) the new board was not validly elected, and (3) the old board was the only valid AWUM board.

Following a hearing, the district court issued findings of fact, conclusions of law, and an order for judgment declaring the old board to be the proper governing body, excluding Shah and Bao Do from the board, and invalidating the resolution to terminate Leiendecker. Within an hour of receiving the order, AWUM summarily terminated Leiendecker's employment.

Leiendecker then filed a motion to dismiss all claims against her. In August 2005, the district court granted her motion.

Later in August 2005, Leiendecker filed the present action, alleging defamation, breach of contract, tortious interference with contract, violation of the Nonprofit Corporation Act, and wrongful termination in violation of the Minnesota Whistleblower Act. AWUM moved for dismissal, and Leiendecker moved for partial summary judgment on her defamation claim. Following the hearing, the district court granted AWUM's motion and dismissed the complaint. This appeal follows.

## ISSUES

I. Were the tort claims alleged in Leiendecker's complaint compulsory counterclaims within the meaning of Minn. R. Civ. P. 13.01?

II. Were the non-tort claims alleged in Leiendecker's complaint barred by rule 13.01 because they were ripe when she answered respondents' third-party complaint?

## ANALYSIS

### I.

Leiendecker first argues that the district court erred by concluding that her "tort claims" are barred in the current lawsuit because they were compulsory counterclaims under Minn. R. Civ. P. 13.01, and Leiendecker failed to assert them in a prior lawsuit involving the same parties. Initially, we note that because the parties submitted affidavits in connection with respondents' motion to dismiss, the motion was converted into a motion for summary judgment. *See* Minn. R. Civ. P. 12.02; Minn. R. Civ.App. P. 110.01 ("The papers filed in the trial court, the exhibits and transcript of the proceedings, if any, shall constitute the record on appeal in all cases."). Accordingly, we review the judgment of dismissal to determine whether genuine issues of material fact remain for trial and whether the district court erred in applying the law. *See State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

Interpretation of the rules of civil procedure is a question of law, which this court reviews de novo. *Smith v. Flotterud*, 716 N.W.2d 378, 381 (Minn.App.2006), *review denied* (Minn. Sept. 27, 2006). Rules of court are to be "construed in the sense in which they were understood and intended at the time the rule was promulgated." *Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 490 (Minn. 1997) (quotation omitted).

Minn. R. Civ. P. 13.01 provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any op-

posing party, if it arises out of the transaction that is the subject matter of the opposing party's claim." Minn. R. Civ. P. 13.01 differs from its federal counterpart. The federal rule applies to claims arising "out of the occurrence or transaction" giving rise to the opposing parties' claims. Fed.R.Civ.P. 13.01(a). The Minnesota rule, by contrast, omits the word "occurrence" and applies only to claims arising from the same transaction.

■ The advisory committee comments indicate that the committee omitted the word "occurrence" deliberately, to avoid making tort claims compulsory counterclaims. *See House v. Hanson,* 245 Minn. 466, 472–73, 72 N.W.2d 874, 878 (1955) (citing Minn. R. Civ. P. 13.01 1951 advisory comm. note). Indeed, the committee twice rejected attempts to add the word "occurrence" to the rule. Recognizing the committee's recommendation, our supreme court concluded that rule 13.01 does not embrace claims in tort and that a party's failure to assert a tort claim as a counterclaim in a prior action does not estop that party from asserting such a claim in an independent action:

> Consistent with the committee's recommendations, Rule 13.01 was approved by this court with the express understanding and intent that the omission therefrom of the word "occurrence" would insure that tort counterclaims would not be compulsory. We hold therefore that the word "transaction" as used in Rule 13.01 does not embrace claims in tort and that therefore the failure of a defendant to assert as a counterclaim any claim he has against the plaintiff does not estop him from asserting such claim in an independent action against the plaintiff.

*Id.* (rejecting claim that plaintiff's action to recover for property damage arising out of collision was barred by plaintiff's failure to assert counterclaim for damages in two prior actions arising out of the same collision).

Respondents argue that *House* stands for the proposition that although all counterclaims are optional in tort cases, they are mandatory in non-tort cases. Thus, according to respondents, if the original lawsuit was a non-tort action, then "any [tort] claim" is a compulsory counterclaim and must be asserted under rule 13.01.

But we see no language in *House* supporting respondents' argument that tort counterclaims must be asserted in a non-tort action under rule 13.01. More importantly, the supreme court advisory committee's reasoning for omitting the word "occurrence" in rule 13.01, which the *House* court quoted with approval, expressly rejects respondents' argument:

> The Committee fears that compulsory counterclaims in personal injury and other tort actions may work a hardship in cases where, for instance, the defendant's injury is presently unknown or where he is not represented by an attorney who appears primarily for him, and suggests that the compulsion be limited to counterclaims arising out of the "contract or transaction" which is the subject of the opposing party's claim.

245 Minn. at 472, 72 N.W.2d at 878. Thus, *House* makes it clear that the word "occurrence" was omitted from rule 13.01 to avoid the potential hardships of making tort claims compulsory. Therefore, we conclude that the word "transaction" in rule 13.01 does not embrace counterclaims in tort, whether the prior action was a tort action or a non-tort action. Instead, the Minnesota version of rule 13.01 provides a blanket exclusion for tort counterclaims.

■ Leiendecker concedes that her claims for breach of contract, wrongful termination, and violation of the Minnesota Nonprofit Act are non-tort claims subject to rule 13.01. She argues, however, that

her claims for defamation and tortious interference with contractual relations are tort claims and are not, therefore, subject to the compulsory-counterclaim rule. We agree. *See, e.g., Church of Scientology of Minn. v. Minn. State Med. Ass'n Found.,* 264 N.W.2d 152, 156 (Minn.1978) (viewing defamation as a tort claim); *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982) (recognizing wrongful interference with contractual relations as tort claim); *see also* W. Page Keeton, et al., *Prosser and Keeton on Torts* § 111, at 771, § 129, at 978–89 (5th ed.1984) (discussing tort of defamation and evolution of tort of interference with contractual relations).

Because we conclude that both defamation and wrongful interference with contract are tort claims and that tort claims are not subject to the compulsory counterclaim provision in rule 13.01, we reverse the summary dismissal of those claims.

### II.

Leiendecker next argues that the district court erred by concluding that her non-tort claims were "ripe" when she answered respondents' third-party complaint and were, therefore, barred under rule 13.01. Leiendecker argues that her claims were not ripe until AWUM terminated her employment in February 2004.

■ "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies...." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 807, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003) (quotation omitted). Thus, a justiciable controversy must exist in order for a litigant's claim to be properly before a court. *Lee v. Delmont,* 228 Minn. 101, 110, 36 N.W.2d 530, 537 (1949) ("Issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable. Neither the ripe nor the ripening seeds of controversy are present."). To establish the existence of a justiciable controversy, the litigant must show a "direct and imminent injury." *State v. Colsch,* 284 N.W.2d 839, 841 (Minn.1979); *see also* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 13.3 (2002) ("Claims maturing after commencement of the action, but before service of the defendant's answer is due must be pleaded by the defendant.").

■ Thus, rule 13.01 contemplates that a counterclaim is compulsory only if the claim is ripe, i.e., if the claim is mature in the sense that a cause of action exists for which a lawsuit may properly be commenced and pursued.

### A. Whistleblower Claim

Leiendecker contends that her whistleblower claim did not become ripe until she was terminated as AWUM's executive director in February 2004. We agree.

■ Minnesota's "whistleblower" statute, Minn.Stat. § 181.932 (2006), provides that "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" because an employee, acting in good faith, seeks to hold the organization accountable for its actions in some manner. A prima facie case of retaliatory discharge under Minn.Stat. § 181.932 "requires the employee to demonstrate statutorily protected conduct by the employee, an adverse employment action by the employer, and a causal connection between the two." *Gee v. Minn. State Colls. & Univs.,* 700 N.W.2d 548, 555 (Minn.App. 2005). "To satisfy the adverse employment action element, the employee must establish the employer's conduct resulted

in a 'material change in the terms or conditions of her employment.'" *Lee v. Regents of Univ. of Minn.,* 672 N.W.2d 366, 374 (Minn.App.2003) (quoting *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir. 1997)).[1] Mere inconvenience without any decrease in title, salary, or benefits, or only minor changes in working conditions does not meet this standard. *Sallis v. Univ. of Minn.,* 408 F.3d 470, 476 (8th Cir.2005).

▪ Leiendecker did not suffer a decrease in her salary, title, or benefits before she was terminated in February 2004. Therefore, her whistleblower claim was not ripe when she answered the third-party complaint earlier that month.

Respondents argue that Leiendecker's claim was ripe in 2003, well before she was terminated, because she complained about illegal board members and actions and suffered "retaliatory actions" at that time. Thus, respondents assert that Leiendecker suffered "some damage" in 2003 and that is when the cause of action accrued. *See Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999) (holding that cause of action accrues in a legal malpractice claim when "some" damage occurs); *see also Antone v. Mirviss,* 720 N.W.2d 331, 336 (Minn.2006) (holding that "some" damage means "compensable" damage). During oral argument, however, Leiendecker unequivocally stated that her nontort claims were for wrongful termination, and that she did not seek damages for AWUM's alleged illegal conduct prior to her termination, even though that conduct was relevant to the underlying factual basis for her claim. Leiendecker thus un-

equivocally waived any claim for damages related to AWUM's pre-termination conduct.

▪ More importantly, a whistleblower claim ripens into a viable cause of action not when an employee suffers "some" damage in connection with her whistleblowing activities, but when the employee suffers "adverse employment action" that effects a "material change in the terms or conditions of her employment." *Lee,* 672 N.W.2d at 374 (quotation omitted). Leiendecker did not suffer a material change in the terms or conditions of her employment until she was terminated in February 2004. Accordingly, despite the fact that she may have suffered "some" damage in 2003 in connection with her alleged whistleblowing, her whistleblower claim was not ripe when she answered the third-party complaint.

### B. Breach of Contract and Minn. Nonprofit Corporation Act Claims

▪ Leiendecker's complaint alleges that AWUM breached her contract when it wrongfully terminated her in violation of its bylaws. The complaint also alleges that AWUM violated the Minnesota Nonprofit Corporation Act, Minn.Stat. §§ 317A.001–.909 (2006), when it failed to comply with the statutory requirements for noticing the board meeting in which it terminated her employment. Respondents argue that because Leiendecker knew in November 2003 that AWUM had plans to terminate her, she could have asserted her wrongful-termination claim in her answer to the third-party complaint. The district

---

1. In *Lee,* this court adopted the Eighth Circuit's "ultimate employment decision" test for retaliatory actions applied in federal Title VII whistleblower actions. That approach was rejected by the Sixth Circuit in *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 801 (6th Cir.2004), which was affirmed by the United States Supreme Court in *Burlington N.*

*& Santa Fe Ry. Co. v. White,* —— U.S. ——, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Because the Supreme Court applied the "materially adverse" standard to Title VII claims in *White,* the Eighth Circuit's "ultimate employment decision" test was left in doubt by *White.*

court concluded that Leiendecker's claims for breach of contract and violation of the nonprofit act were "ripe" well before she filed her answer to the third-party complaint.

Both Leiendecker's breach-of-contract and statutory-violation claims are predicated on her assertion that she was wrongfully terminated. Leiendecker seeks no damages for AWUM's pre-termination conduct. And despite Leiendecker's knowledge of the November 2003 meeting at which the old board resolved to fire her, AWUM still maintained Leiendecker in her role as executive director and did not officially terminate her until after she filed her third-party answer. On this record, therefore, Leiendecker's breach-of-contract and statutory-violation claims were not ripe when she answered respondents' third-party complaint.

■ Finally, AWUM argues that even if rule 13.01 did not estop Leiendecker from asserting her claims, the claims are barred by the doctrine of res judicata. *See Erickson v. Comm'r of Dep't of Human Servs.*, 494 N.W.2d 58, 61 (Minn.App. 1992) (stating that the application of res judicata is in the discretion of the district court). But because the application of res judicata is discretionary and the district court did not address the issue, there is nothing for this court to review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts review only those issues considered and decided by the district court). On remand, the district court may wish to consider whether to apply res judicata to the facts of this case.

### DECISION

Because we conclude that appellant Leiendecker's tort claims are not subject to rule 13.01 and that her non-tort claims were not ripe when she answered respondents' third-party complaint, we reverse and remand for proceedings consistent with this opinion.

**Reversed and remanded.**